UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| STACIA S. BOGDAN and FRANK BOGDAN, | : : | CIVIL NO. 3:02cv637(JCH) |
| Plaintiffs, | : : | |
| V. | : : | |
| ZIMMER, INC. | : : | |
| Defendant. | : | MAY 17, 2006 |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT ZIMMER, INC.'S
MOTION FOR SUMMARY JUDGMENT**

The plaintiffs in the above captioned matter, **STACIA BOGDAN AND
FRANK BOGDAN**, hereby respectfully provide the following memorandum of law
in opposition to the defendant Zimmer, Inc.'s ("Zimmer") April 25, 2006 Motion for
Summary Judgment Regarding.  For the reasons that follow, this Court should
deny Zimmer's motion for summary judgment.

I.      **STATEMENT OF PROCEEDINGS**

By way of a Complaint dated April 10, 2002, the plaintiff, Stacia Bogdan,
alleged that she sustained injuries and losses due to the defective nature of the

1

Centralign hip component that was implanted in her on October 6, 1994.  The Complaint was brought in four counts, namely, for claims alleging a violation of the Connecticut Product Liability Act, Conn. Gen. Stat, §52-572m, a violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §42-110a, common law fraud and loss of consortium on the behalf of the plaintiff, Frank Bogdan. The only remaining claims in this case are the claims that Zimmer violated the CPLA by defectively designing the product and failing to warn consumers, including the plaintiff, of its dangers, as well as the plaintiff's derivative the loss of consortium claim.

The other claims were previously dismissed by way of the first summary judgment motion that was filed by Zimmer.  As this Court is aware, when Zimmer previously moved for summary judgment, this Court, Squatrito, J., in a Memorandum of Decision dated March 29, 2005, granted in part and denied in part Zimmer's motion for summary judgment.  The plaintiffs then appealed this decision to the United States Court of Appeals for the Second Circuit.

On January 6, 2006, the Second Circuit issued its decision on the plaintiffs' appeal.  Bogdan v. Zimmer, Inc., No. 05-2087, 2006 WL 41286 (2d Cir.,

2

January 6, 2006).  In pertinent part, the Second Circuit held that this Court applied the incorrect standard in determining whether the plaintiffs' claims under the Connecticut Product Liability Act ("CPLA") were time-barred.  Id. at *2. Therefore, the Second Circuit vacated that portion of this Court's ruling in which it dismissed the plaintiffs' product liability claims.  Id.  The case was then remanded so as to provide this Court with an opportunity to apply the appropriate standard to the plaintiffs' CPLA claims.   The present motion for summary judgment followed.

## II.    STATEMENT OF FACTS

Sometime prior to 1994, the plaintiff, Stacia Bogdan, began experiencing pain and limitations in her right hip, so much so that she sought medical treatment from Dr. Bruce H. Moeckel.  (Exhibit A, Pl. Aff. ¶4).  Indeed, the pain and limitations were substantial enough that Dr. Moeckel performed a total hip arthroplasty (THA) on the plaintiff on October 6, 1994.  (Id.)  In so doing, Dr. Moeckel replaced the plaintiff's right hip with a Zimmer Centralign Precoat, size 2 femoral stem.

Unfortunately, within one year of the THA, the plaintiff began to

3

experience pain in her right hip again and she reported this, appropriately, to her doctor.  As a result of this report, Dr. Moeckel x-rayed the plaintiff's hip and conducted others tests, all of which confirmed that she developed aseptic loosening of the Centralign hip replacement.  (Id., ¶5).  Although Dr. Moeckel told the plaintiff that he the loosening occurred earlier than he anticipated, he never said anything to suggest that this was a result of a defective device and the plaintiff had no reason to believe that this was the case.  Indeed, when the plaintiff asked him why it would have loosened earlier than expected, Dr. Moeckel simply replied that he did not have an explanation to give her.  (Id., ¶6).

Dr. Moeckel continued to monitor the plaintiff's condition for the next several months.  When it was clear that the hip replacement was continuing to loosen, he recommended that the plaintiff undergo a revision surgery.  In concern for her own well-being, the plaintiff followed Dr. Moeckel's advice and underwent this revision on July 16, 1996.

Sadly, the plaintiff's experience is similar to that of other plaintiffs that had cases before this Court, as well as other persons around the country.  Dr. Richard Santore of San Diego reported a failure rate of 11.4% for the Zimmer

4

Centralign after carefully studying the results in patients in his own practice. (Exhibit B, G.M. Sylvain, MD, et al, "Early Failure of a Roughened Surface, Precoated Femoral Component in Total Hip Arthroplasty," The Journal of Arthroplasty, Vol. 16 No.2 (2001) at 141).  Dr. Santore's article, published in the peer-reviewed Journal of Arthroplasty, examined 98 primary hip arthroplasties between March 1992 and December 1995, and found 10 failures by aseptic mechanical loosening of the femoral components at an average of 30.6 months postoperatively.  All failed due to debonding at the cement-metal interface, typically in the proximal lateral portion thereof.  (Id.; See also Exhibit C, Dep. Of Dr. Santore at 73-74).  Dr. Santore reported in his article and testified under oath that the 11.4% failure rate during the period in question was "unacceptably high" and that he considers an "acceptable" failure rate during this period to be "one percent or less."  (Id. at 34.)

Nevertheless, the Centralign was marketed and sold to hospitals from 1992 to 1998 before it was finally removed from the market.  (Exhibit D, Dep. Of Roy Crowninshield at 99).  Indeed, the Centralign was promoted by Zimmer as an improvement in cemented hip technology.  Zimmer's product brochure

5

represented that the Centralign's combination of "precoating and texturing" would "nearly triple the fatigue strength of the cement/metal interface," resulting in better clinical outcomes.  (Exhibit E, Zimmer product brochure).

Hence, Zimmer represented to physicians, including the plaintiff's surgeon, Dr. Moeckel, that the Centralign was an improvement of the Harris Precoat and that the Centralign would offer "improved stress distribution as a means to enhance long-term implant performance."  (Id.)  Unfortunately, as Dr. Moeckel testified, if he had known the truth of the Centralign's  increased risk of premature failure, he would not have considered or recommended its use and would not have implanted the Centralign during the plaintiff's THA.  (Exhibit F, Dep. Of Dr. Bruce Moeckel at 34-35, 83; See also Exhibit G, Moeckel Aff. ¶7).

Zimmer, however, did nothing to remedy the problem or provide its product users with information to minimize the chances of an early failed Centralign or the harm which would result therefrom.  Zimmer simply recommended using alternative prostheses that were larger than the Centralign for those patients for whom cemented fixation was elected, and recommended that the "size 1 & 2 Centralign should only be utilized in patients with a very small

6

femoral anatomy and low body weight." (Exhibit D, Dep. Of Roy Crowninshield at 296). Zimmer's clear attempts at damage control were the continuation of a cover-up which began by 1996 when it began learning of, and denying, widespread early failures. Despite recognizing the Centralign's problems and a significant number of complaints of early mechanical loosening, Zimmer never advised its users of ever-increasing reports of catastrophic failures, never issued any advisories or recalls, and never notified any governmental authorities of the problems with the Centralign. In fact, to this day, Zimmer has **never** acknowledged that the Centralign was a failure and denies that the product was in any way dangerous or defective.

Sadly, prior to undergoing the THA, the plaintiff initially understood that her hip would last ten years. She asked Dr. Moeckel why her hip failed earlier than that time, but Dr. Moeckel provided no response to this question. (Exhibit A, Pl. Aff., ¶6). Indeed, it was not until November 2001 that Dr. Moeckel told the plaintiff, **for the first time**, that her initial hip prosthesis was the subject of lawsuits alleging a defective design that could explain why the Centralign implanted into the plaintiff's right side loosened and failed prematurely. (Exhibit

7

H, Dep. Of Stacia Bogdan at 19, 71, 73, 74).  Thereafter, Stacia Bogdan and Frank Bogdan filed their complaint in this matter on April 10, 2002.

For the reasons further discussed below, the defendant's Motion for Summary Judgment should be denied.

### III.   ARGUMENT

#### A.   Standard Of Review

Fed. R. Civ. P. 56(c) provides that summary may be granted if the evidence demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute.  See American Intern. Group, Inc. v. London Am. Intern., 664 F.2d 348, 351 (2nd Cir. 1981).  To that end, the Court should resolve all ambiguities and draw all reasonable inferences **against** the moving party.  See  United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).  Likewise, the Court should not resolve disputed issues of fact, but rather must assess whether there are any factual issues to be tried.  Knight v. United States Fire Ins. Co., 804 F.2d 9, 11 (2nd Cir. 1986).  **The determination of when a plaintiff, in the exercise of reasonable care, should have discovered actionable harm is ordinarily a question reserved for the trier of fact.**  Tarnowsky v. Socci, 271 Conn. 284,

288, 856 A.2d 408 (2004);  Lagassey v. State, 268 Conn. 723, 748-749, 846

A.2d 831 (2004).

    **B.**    **A Genuine Issue Of Material Fact Exists As To Whether the Plaintiff Brought Her Product Liability Claims Within The Statute Of Limitations**

    Pursuant to Conn. Gen. Stat. §52-577a, a product liability claim must be

brought within three years from the date when the injury is first sustained or

discovered or in the exercise of reasonable care **should** have been discovered.

Courts construing this statute have concluded that a cause of action for product

liability accrues when the plaintiff suffers an actionable harm.  Gnazzo v. G.D.

Searle & Co., 973 F.2d 136, 138 (2nd Cir. 1992).  Actionable harm occurs when

the plaintiff discovers, or in the exercise of reasonable care, should have

discovered the essential elements of a cause of action.  Catz v. Rubenstein, 201

Conn. 39, 44, 513 A.2d 98 (1986).  Actionable harm occurs when the plaintiff has

knowledge of facts that would put a reasonable person on notice of the nature

and extent of an injury, as well as knowledge that the injury was caused by the

negligence of another.  Id. at 47.  The harm complained of need not have

reached its fullest manifestation in order for the limitation period to begin to run,

rather a party need only have suffered some form of actionable harm.  Id. at 43-

45.  **The determination of when a plaintiff in the exercise of reasonable care**

**should have discovered actionable harm is ordinarily a question reserved**

**for the trier of fact.**  Tarnowsky v. Socci, 271 Conn. 284, 288, 856 A.2d 408

(2004);  Lagassey v. State, 268 Conn. 723, 748-749, 846 A.2d 831 (2004).

The Connecticut Supreme Court has recently addressed the determination

of when a plaintiff has an "actionable harm."  In Lagassey, the Connecticut

Supreme Court conducted a thorough review of all several cases defining an

"actionable harm."

> It is also apparent, however, that *Catz* and *Taylor* stand for the
> proposition that actionable harm does not occur until the plaintiff
> discovers or should have discovered that the harm complained
> of *was caused by the negligence of the defendant.* Finally, *Taylor*
> makes clear that the language "in the exercise of reasonable care
> should have [been] discovered" used in § 52-584, and by analogy
> § 4-148(a), imposes no specific duty upon a plaintiff to investigate
> a potential claim of malpractice.

Id. at 747.  In Tarnowsky, the Connecticut Supreme Court echoed the decision

by the Lagassey court.  In addition, the Tarnowsky court also stressed that

knowledge of the identity of a tortfeasor is an essential element of a cause of

action.  <u>Id.</u> at 288.  Indeed, "Connecticut has no statutory provision for suing a

"John Doe" defendant."  <u>Id.</u> at 292.  Thus, it follows that the plaintiff must have

known, or reasonably should have known, the identity of the defendant prior to

the plaintiff having an actionable harm.  <u>Id.</u> at 297.   Based on these holdings, the

plaintiffs, in this case, maintain that their cause of action was instituted in a timely

manner.

    In its summary judgment brief, however, Zimmer relies upon <u>Gnazzo v.</u>

<u>G.D. Searle & Co.</u>, 973 F.2d 136 (2nd Cir. 1992) and <u>Michals v. Baxter Healthcare</u>

<u>Corp.</u>, 289 F.3d 402 (6th Cir. 2002) in support of its request for relief.  These

cases are inapposite to the present controversy and provide no guidance to this

Court in deciding this motion.

    First, in <u>Michals</u>, the evidence demonstrated that the plaintiff believed that

she had sustained injury as a consequence of the silicone breast implants

manufactured by the defendant as early as 1977 when her doctor told her the

problems she was experiencing were caused by the implants.  Indeed, the doctor

went so far as to advise her to have them replaced with implants manufactured

by another company.  Thereafter, the plaintiff filed a lawsuit in 1993 against the

-12-

manufacturer of the implants, although she did not include a product liability claim until three years later. The Court, in <u>Michals</u>, addressed a situation in which the plaintiff knew that she had sustained harm as a consequence of her use of the defendant's product and replaced the defendant's product with one made by another manufacturer. She did not, however, understand the full extent of the defendant's liability until she received a notification of a class action lawsuit three years after she first filed her lawsuit. On these facts, the district court entered summary judgment in favor of the defendant on the finding that the plaintiff's claims were time barred in that her claim was brought more than three years after she knew that she had suffered injury caused by the defendant's product.

The facts of <u>Michals</u> add nothing to the Court's analysis of the present case. This action does not present a situation, as in <u>Michals</u>, where the plaintiff, knew that she had suffered injury due to the conduct of Zimmer because of her doctor's express representations, had the implants removed, brought suit under various legal theories and then sought to add a product's liability count three years after initially filing her lawsuit. Rather, the present case presents a

-13-

situation, as in <u>Tarnowsky</u>, where the issue is whether the plaintiff knew or reasonably should have known that she suffered **any** actionable harm within three years of the filing of her complaint.

Likewise, in <u>Gnazzo</u>, the Second Circuit Court of Appeals upheld the district court's summary judgment order on a finding that the plaintiff knew that she had sustained harm as a result of her use of an intrauterine device ("IUD") manufactured by the defendant Searle more than three years before bringing her cause of action. In <u>Gnazzo</u>, the Court found that the plaintiff knew by 1981 that an IUD had caused her harm because she had been experiencing trouble becoming pregnant, had heard and read about how damaging IUDs could be and had established a connection between her problems and her use of the IUD. <u>See</u> <u>Gnazzo</u> at 138. The Second Circuit rejected the plaintiff's arguments that her cause of action only accrued in 1989 when she was informed that she was infertile as a result of her previous use of the IUD. As in <u>Michals</u>, the Court's analysis turns on a finding that the plaintiff knew that she had sustained injury and knew the identity of the party causing that injury more than three years before she brought her cause of action. Pursuant to <u>Michals</u> and <u>Gnazzo</u>, a

–14–

product liability cause of action accrues when a plaintiff knows that she has suffered harm and knows the identity of the entity causing the harm. In addition, under Gnazzo, the statute of limitations is not extended upon a finding of a more serious diagnosis. As such, Michals and Gnazzo have no factual relationship to the present case. Simply put, this case, unlike Michals and Gnazzo, does not present a scenario in which the plaintiff knew that she sustained an injury caused by Zimmer, yet only brought her claim when she had received a more serious medical diagnosis.

In the present case, the record indicates that Dr. Bruce Moeckel implanted a Zimmer Centralign hip prosthesis in the plaintiff in 1994. The plaintiff was not informed that the defendant Zimmer was the designer and manufacturer of this component in 1994. (Exhibit A, Pl. Aff., ¶6). The plaintiff **never** received any written information from the defendant Zimmer or anyone else regarding this device. The defendant attempts to attribute knowledge to the plaintiff by pointing out that the "peel-n-stick" labels denoting the name of the manufacturer of the prosthetic hip were placed into the plaintiff's medical records. The question remains, however, as to why the plaintiff would request copies of her medical

-15-

records if she had no reason to believe that the failure of her hip was due to the negligence of some other person or entity.  The answer is simple: the plaintiff would not, and did not, request copies of her medical records because she had no reason to suspect that the prosthetic hip was defective.

Dr. Moeckel performed the revision surgery on the plaintiff.  The only information that the plaintiff was given prior to and after the revision surgery was that the hip loosened.   (Exhibit A, Pl. Aff. ¶¶5,6).  Unlike in <u>Michals</u>, <u>Norris v. Baxter Healthcare Corp.</u>, 397 F.3d 878 (10th Cir. 2005), and <u>Breaux v. Danek Med. Inc.</u>, No. Civ.A. 95-1730, 1999 WL 64929, at *4-5 (E.D. La. Feb. 4, 1999), cases relied upon by the defendant, the plaintiff herein was not told what caused the prosthesis to loosen, that the loosened device had been designed and manufactured by Zimmer or that she should have the prosthesis replaced with one made by a different manufacturer. As such, and contrary to the rulings relied upon by the defendant, the plaintiff herein was not given any reason to believe that the pain and symptoms she experienced after undergoing the THA were the result of a defective medical device.  (See Def.'s Mem. Of Law in Support of M. for Summ. Jud., April 25, 2006, at 13).  Furthermore, the plaintiff never saw the

-16-

device after it was removed.  **Prior to 2001, no one ever told the plaintiff that it was the device, itself, that had caused the loosening and the plaintiff had no reason to believe that this was the case.**  (Exhibit H, Dep. Of Stacia Bogdan at 19, 71, 73, 74; See also Exhibit G, Moeckel Aff. ¶8).  Simply put, the fact that a surgery does not work, does not automatically lead to the conclusion that someone was negligent. Indeed, the world will forever be changed when, and if, the day comes that doctors can, without hesitation, give a 100% guarantee that a surgery will be a success.

It is for this very reason that courts have consistently held that a plaintiff does not have an affirmative duty to investigate.  Lagassey, 268 Conn. 723, 747, 846 A.2d 831, 846 (2004).  It is for this additional reason that the defendant cannot possibly sustain his burden under the "should" have discovered standard enunciated by the Second Circuit.  As in Lagassey, the defendant herein has done nothing more but argue that the plaintiff did not investigate the possibility that she had a claim until it was too late. In so doing, the defendant is, once again, intermingling "could have known" and "should have known" despite the direction of the Second Circuit not to do this.   This Court cannot countenance

–17–

the defendant's attempt to cloud the issue by again urging it to focus on what the plaintiff "could" have known had she conducted a more thorough investigation. Thus, the defendant has not met its burden under the "should have known" standard.

As the plaintiff testified that she first learned in 2001 that Zimmer had designed and manufactured the device and that the device, itself, may have caused the loosening to occur.  Thus, it was in 2001 that the plaintiff had an actionable harm and it was in 2001 that her cause of action accrued.

Actionable harm occurs when the plaintiff discovers or in the exercise of reasonable care **should** have discovered the essential elements of a cause of action.  The defendant contends that the plaintiff "should" have known of the defective nature of the device simply as a result of the pain that she had after it was implanted.  Such a conclusion does not, however, follow simply because the plaintiff experienced pain.  Indeed, when the plaintiff specifically asked Dr. Moeckel what caused her hip to fail so quickly, she was not provided with **any** response at all, never mind a reason to believe that the device was defective.  In point of fact, the plaintiff was not provided reason to believe that the cause of her

-18-

injury and pain was the defective design of the Zimmer device nor was she ever provided information that Zimmer was the entity that designed and manufactured this product until 2001.

Rather, the plaintiff, appropriately, sought medical care for her injury and pain, provided information regarding her condition to her doctors and followed the instructions of her doctors.  There was no reason for her to know that a defective device caused her injury and pain and the defendant has not presented this Court with any evidence that she "should" have known that this was the case.

Thus, the issue of whether the plaintiff acted with reasonable care to discover actionable harm is a question that should be reserved for the trier of fact.  See Tarnowsky, 271 Conn. 284, 856 A.2d 408 (2004).  The facts demonstrate that the plaintiff followed her physicians' orders and inquired of her physician as to why her implant failed.  When she was provided with no information that the design of the implant caused her injury, she understandably took no action.  When, in 2001, she received information that the device may have caused her injury, as well as information as to Zimmer's identity, she promptly sought legal advice and pursued a cause of action.

-19-

Pursuant to <u>Tarnowsky</u> and <u>Lagassey</u>, the statute of limitations does not commence to run until the plaintiff has a reasonable opportunity to discover her injury, the cause of her injury and the identity of the party responsible for that injury.  The determination of these issues, pursuant to <u>Tarnowsky</u> and <u>Lagassey</u>, is a question of fact reserved for the trier of fact and is not amenable to summary judgment.  Accordingly, this Court should deny the defendant's motion for summary judgment.

      **C.**      **The Statute Of Limitations Was Tolled By Zimmer's Continuing Course Of Conduct**

Although the statute of limitations for a product liability claim in Connecticut is three years, it is well established that when the wrong sued upon consists of a continuing course of conduct, the statute does not begin to run until that course of conduct is completed.  <u>Handler v. Remington Arms Co.</u>,144 Conn. 316, 321 (1957).   In the present case, the plaintiff did not even know she had a Zimmer implant or that her problems might be attributable to Zimmer's product until late 2001.  Accordingly, the facts of this case raise a genuine issue for the jury as to whether the statute of limitations was tolled by Zimmer's continuing course of conduct.

To establish a continuing course of conduct that may toll the statute of limitations, there must be evidence of the breach of a duty that remained in existence after commission of the original wrong related thereto. That duty must not have terminated prior to commencement of the period allowed for bringing an action for such a wrong. . . . Where [our Supreme Court has] upheld a finding that a duty continued to exist after the cessation of the act or omission relied upon, there has been evidence of either a special relationship between the parties giving rise to such a continuing duty or some later wrongful conduct of a defendant related to the prior act. . . . <u>The continuing course of conduct doctrine is "conspicuously fact-bound."</u>

<u>Sanborn v. Greenwald</u>, 39 Conn. App. 289, 295 (1995) (emphasis added) (quoting <u>Blanchette v. Barrett</u>, 229 Conn. 256, 275 (1994)).  See also <u>Sherwood v. Danbury Hospital</u>, 252 Conn. 193 (2000), in which the Court concluded there was a genuine issue of material fact as to whether the statute of repose in Conn. Gen. Stat. § 52-584 was tolled by the continuing course of conduct doctrine on account of the defendant's wrongful conduct.  <u>Sherwood</u>, 252 Conn. at 195-96.

Under Connecticut law, the failure to warn of a product's unreasonably

-21-

dangerous propensities alone constitutes a defect.  Sharp v. Wyatt, Inc., 31

Conn. App. 824, 833 (1993), *aff'd*, 230 Conn. 12 (1994); see also Gajewski v.

Pavelo, 236 Conn. 27, 28-29 (1996) (Under General Statutes § 52-572q, . . . a

product may be defective solely because a manufacturer or seller has failed to

provide adequate warnings or instructions to a claimant who has suffered harm

because of the absence of such warnings or instructions.").  It is well established

that whether a product is defective under Conn. Gen. Stat. § 52-572q is a

question of fact for the trier of fact.  The statute sets forth factors which the trier

of fact may consider in determining whether warnings were required or adequate.

 See § 52-572q(b).  These factors include the likelihood that the product would

cause harm of the type suffered by the plaintiff; the seller's ability to anticipate at

the time of manufacture that the product user would be aware of the product risk

and nature of potential harm; and the feasibility and cost of appropriate warnings

and instructions.

Here, the defendant Zimmer failed to warn the public, including the plaintiff

and her doctors, that the Centralign femoral component had dangerous

propensities, including a 11.4% catastrophic short-term failure rate.  The

defendant has never admitted that the Centralign was dangerous or defective, or provided adequate warnings or instructions to minimize harm, thereby tolling the statute of limitations.   The United States Court of Appeals for the Second Circuit recently reaffirmed that "the post-sale duty to warn exists in negligence, and is cognizable under the CPLA."  Densberger v. United Tech. Corp., 283 F.3d 110, 116 (2nd Cir. 2002).  Accordingly, the continuing failure to warn of a product's defect would constitute a continuing course of conduct which tolls the statute of limitations.

In addition, Zimmer's repeated and continuing attempts to conceal the dangerous and defective propensities of the Centralign, starting in 1996, constitute continuing fraud which tolls the statute of limitations.  Fraudulent concealment of the existence of a cause of action tolls the running of the statute of limitations. See, e.g., Barrett v. United States, 689 F.2d 324, 327 (2d Cir. 1982), cert. denied, 462 U.S. 1131, 103 S.Ct. 3111 (1983).  See also In Re State Police Litigation, 888 F. Supp. 1235, 1250 & n.15 (D. Conn. 1995), appeal dismissed 88 F.3d 111 (2d Cir. 1996) (discussing fraudulent concealment and the continuing violation doctrine) (citing Hamilton v. Smith, 773 F.2d 461, 467 (2d Cir.

1985)); <u>Association Against Discrimination in Employment, Inc. v. Bridgeport</u>, 647

F.2d 256, 259-61 (2d Cir. 1981), *cert. denied*, 455 U.S. 988 (1982); <u>Doe v. Blake</u>,

809 F. Supp. 1020, 1025 (D. Conn. 1992); <u>Members of Bridgeport Housing</u>

<u>Authority Police v. Bridgeport</u>, 85 F.R.D. 624, 637 (D. Conn. 1980); and <u>Cross v.</u>

<u>Huttenlocher</u>, 185 Conn. 390, 400 (1981).    Since at least 1996 Zimmer was

aware of a large number of early failures with its Centralign design, yet continued

to deny and cover up the problem through the present day.  This on going course

of conduct tolls the statute of limitations, such that the plaintiff's action is not

time-barred.  For these reasons, a genuine issue of material fact exists as to

whether the product was defective under Connecticut law and whether the

statute of limitations was tolled by the continuous course of conduct doctrine, or

the fraudulent concealment doctrine, and the defendant's Motion for Summary

Judgment should be denied for this additional reason.

## III.     CONCLUSION

For the foregoing reasons, this Court should deny the defendant Zimmer, Inc.'s Motion for Summary Judgment Regarding Statute of Limitations. Accordingly, as the loss of consortium claims are derivative of the claims of Mrs. Bogdan, this Court should also deny the Motion for Summary Judgment insofar as it addresses the claims of the plaintiff, Frank Bogdan.


THE PLAINTIFFS


By_____/s/_____
        Robert I. Reardon, Jr.
        **THE REARDON LAW FIRM,  P.C.**
        160 Hempstead Street
        New London, CT  06320
        Phone: 860-442-0444
        Fax: 860-444-6445
        Email: reardonlaw@aol.com
        Federal Bar No. ct05358

## <u>CERTIFICATION</u>

I hereby certify that a copy of the foregoing has been mailed on May 17, 2006, to the following counsel of record:

Francis H. Morrison, III, Esq.
Day, Berry & Howard LLP
CityPlace I
Hartford, CT 06103-3499

Albert J. Dahm, Esq.
Michael S. Elvin, Esq.
Dahm & Elvin, LLP
9604 Coldwater Road, Suite 204
Fort Wayne, IN 46825

_____/s/_____
Robert I. Reardon, Jr.
**THE REARDON LAW FIRM,  P.C.**
160 Hempstead Street
New London, CT  06320
Phone: 860-442-0444
Fax: 860-444-6445
Email: reardonlaw@aol.com
Federal Bar No. ct05358