UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| STACIA S. BOGDAN and FRANK BOGDAN, | :<br>: CIVIL ACTION NO: 3:02CV637 (JCH)<br>: |
| Plaintiffs, | :<br>: |
| v. | :<br>: |
| ZIMMER, INC., | :<br>: |
| Defendant. | : JULY 7, 2006 |

**ZIMMER, INC.'S REPLY IN SUPPORT OF
ITS MOTION TO STRIKE PLAINTIFFS' EVIDENCE**

Zimmer, Inc. ("Zimmer"), by its attorneys, respectfully submits its Reply in Support of Its Motion to Strike Plaintiffs' Evidence.

## ARGUMENT

Zimmer established in its opening memorandum that the Court cannot consider in the context of summary judgment evidence that would not be admissible at trial. *See Rubens v. Mason*, 387 F.3d 183, 188 (2d Cir. 2004) ("in deciding a motion for summary judgment, a court may rely only on material that would be admissible at trial"); *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 746 (2d Cir. 1998) ("On a summary judgment motion, the district court properly considers only evidence that would be admissible at trial."); *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997) ("only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment"); *Burlington Coat Factory Warehouse Corp. v. Esprit de Corp.*, 769 F.2d 919, 924 (2d Cir. 1985) (party "cannot rely upon inadmissible hearsay in opposing a motion for summary judgment absent a showing that admissible evidence will be available at trial") (internal citations omitted); *Leak v. United Techs. Corp.*, 81 F. Supp. 2d 373, 377 (D. Conn. 1999) ("Plaintiff cannot raise genuine issues of material facts with hearsay

statements."). Although Plaintiffs offer numerous legal and factual arguments in an attempt to salvage the admissibility of the challenged exhibits, those arguments fall short. The Court should strike the challenged exhibits.

A. **The Santore Article Would Not Be Admissible Under Fed. R. Evid. 803(18).**

In its opening memorandum, Zimmer established that the Court should strike the Santore article, Exhibit B to Plaintiffs' Opposition to Zimmer's Motion for Summary Judgment, because the article is inadmissible hearsay and is not relevant to any issue raised by Zimmer's statute of limitations argument. (Zimmer's Memorandum of Law in Support of Its Motion to Strike Plaintiffs' Evidence ("Op. Mem.") at 3-4.) Plaintiffs do not dispute that the article is not relevant and the Court should strike it for that reason alone. See Fed. R. Evid. 401 (defining relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence".) Plaintiffs' only argument is that the article is admissible under the learned treatise hearsay exception. (Plaintiffs' Response to Zimmer's Motion to Strike ("Resp.") at 14-15.) However, even if the Court were to disregard Plaintiffs' failure to explain why the article is relevant to the pending motion, Plaintiffs have not offered evidence sufficient to satisfy the requirements of Rule 803(18). Accordingly, the article would not be admissible at trial and should be stricken.

Federal Rule of Evidence 803(18) provides:

> **Learned Treatises.** To the extent called to the attention of an expert witness upon cross-examination or relied upon by the expert witness in direct examination, statements contained in published treatises, periodicals, or pamphlets on a subject of history, medicine, or other science or art, established as a reliable authority by the testimony or admission of the witness or by other expert testimony or by judicial notice. If admitted, the statements may be read into evidence but may not be received as exhibits.

2

The rule requires in the first instance that "a proper foundation as to the authoritativeness of the text must be laid by an expert witness." *Schneider v. Revici*, 817 F.2d 987, 991 (2d Cir. 1987). Such foundation is necessary to establish the trustworthiness of the treatise as viewed by professionals in the field. *Id.* In *Schneider*, the defendant attempted to offer as a learned treatise his own book. *Id.* Although the Court repeatedly instructed the defendant's counsel that he needed to lay a foundation that the book was authoritative, counsel failed to do so. *Id.* The district court excluded the book and the Second Circuit affirmed, holding that the defendant had not satisfied the threshold requirement of Rule 803(18) that the book be authoritative. *Id.*

Here, like the defendant in *Schneider*, Plaintiffs have failed to establish that the article or the journal in which it was published is authoritative in the field. Plaintiffs refer the Court to their deposition of Dr. Santore, but nowhere in that deposition did Plaintiffs ask or did Dr. Santore state that the journal in which the article was published is authoritative in the field. Accordingly, the article would not be admissible at trial under Rule 803(18) and the Court should strike it.

Likewise, the article is not admissible because no designated expert has relied on it to form an opinion. Plaintiffs claim the article is admissible because they have named Dr. Santore as an expert witness. (Resp. at 15.) That is false. Plaintiffs have not designated Dr. Santore as an expert witness. Plaintiffs have served no expert designations in this case. In the other cases that had been consolidated with this case, Dr. Santore never was designated as an expert. Indeed, Dr. Santore confirmed in his deposition that he was not serving as an expert witness for either side in this case. (Santore Dep., Ex. C to Resp., at 14, ll. 10-13.) Further, he expressly stated that he is not qualified to provide expert testimony in the area of biomaterial science, the

discipline from which any expert testifying regarding an alleged defect in the Centralign would have to be drawn. (*Id.* at 58, ll. 18-21.)[1]

Further, Plaintiffs have not disclosed an expert opinion elicited from Dr. Santore that is based on the content of the article. The plain language of Rule 803(18) provides that a learned treatise may be used only when relied on by the expert during direct examination. In other words, the treatise is not a substitute for obtaining an expert opinion. It can only serve to support a properly presented opinion. Plaintiffs apparently understand the problem with their theory and state that "[a]s the author of the article, Dr. Santore has relied on its contents in the formation of his opinions." (Resp. at 15.) But the fact that Dr. Santore may have opinions is not sufficient to satisfy the requirements of Rule 803(18). The opinion which provides the basis for admissibility must itself be admissible during trial. Until Plaintiffs properly designate Dr. Santore and offer an opinion from him, there is no basis for admitting the Santore article. Indeed, if the Court reads the entire deposition, the reason for Plaintiffs' reliance on the article becomes clear. Dr. Santore admitted the limitations of his paper and any conclusions appropriately to be drawn from his work, remarking that the "fair way" to describe what he observed about the Centralign was and is "a failure pattern with imprecisely identified risk factors and/or precipitating events" given that "there were a lot of uncontrolled wild cards in this series, including different cups, different plastics, that make it very difficult to draw [] precise conclusions about what was responsible for the failure" and that other surgeons were having a "very favorable experience" and/or "no difficulties." (Santore Dep., Ex. C to Resp., at 28, 1. 8-22; p. 29, 1. 4-8; p. 50, 1. 5-11.) Dr. Santore's characterization of his own work does not support a conclusion regarding the central question in this case – whether the Centralign is defective. Because Plaintiffs do not like the

---

[1] Dr. Santore was identified as a person with knowledge about this case in the initial disclosures filed in several of the consolidated cases. However, those disclosures did not designate him as an expert witness and Plaintiffs in this case never filed initial disclosures because discovery was limited to the threshold statute of limitations issue.

author's interpretation of his article, they would rather offer it into the record accompanied by their own interpretation. They cannot do that. The Court should strike the article.

**B.    Plaintiffs' Arguments Regarding Temporal Context Cannot Disguise Their Post Hoc Efforts to Revise Mrs. Bogdan's Testimony.**

Zimmer demonstrated in its opening memorandum that Mrs. Bogdan's statements in her recent affidavit, Exhibit A to Plaintiffs' Opposition to Zimmer's Motion for Summary Judgment, are directly contradicted by her previous deposition testimony. (Op. Mem. at 4-7.) To deflect the force of Zimmer's arguments, Plaintiffs now claim Mrs. Bogdan's affidavit refers to time periods different than those about which she testified during her deposition. (See Resp. at 4-9.) But no matter how Plaintiffs attempt to spin the significance of the new affidavit, their efforts to revise and "correct" Mrs. Bogdan's testimony are clear.

Mrs. Bogdan testified during her deposition that she does not remember whether Dr. Moeckel told her why her implant had failed prematurely. (Deposition of Stacia Bogdan, October 30, 2002, p. 50 ll. 4 – 15; p. 55 ll. 5 – 9, attached as Exhibit A to Plaintiffs' Opposition to Summary Judgment.) Indeed, she repeatedly testified that she remembered very little about her discussion with Dr. Moeckel. (*Id.*, at p. 48 l. 23 – p. 49 l. 14; p. 50 ll. 12-15.) Yet, in her recent affidavit, Mrs. Bogdan claims to have regained her memory, stating that Dr. Moeckel "did not give [her] any reason to suspect that it loosened because it was defective or because of the negligence of Zimmer." (*Id.* ¶ 6.) To save the newly minted testimony, Plaintiffs argue the statement refers to the "entire period of time in which she was treated by Dr. Moeckel." (Resp. at 5.) But that temporal reference appears nowhere in the affidavit. Indeed, it is unclear about what time period Mrs. Bogdan is testifying in Paragraph 6. She could as easily be referring to one of her specific visits with Dr. Moeckel as to the entirety of her experience with him.

5

Moreover, given Mrs. Bogdan's failing memory regarding almost all subjects she discussed with Dr. Moeckel, it is incredible for her to now contend that she has recovered sufficient memory to know that Dr. Moeckel never said anything that might lead her to suspect her implant was faulty.

Mrs. Bogdan also testified during her deposition that Dr. Moeckel told her Zimmer's identity in November 2001 when he called to refer her to the Reardon Law Firm to pursue this lawsuit. (Ex. A. to Plaintiffs' Opposition at 73, ll. 3-6.) Yet, in her affidavit, she testifies that Dr. Moeckel "never even" told her the name of the company that manufactured her implant. Realizing their mistake, Plaintiffs claim the statement refers only to the "time period in which the Plaintiff was under the care of Dr. Moeckel." (Resp. at 6.) Again, the affidavit by its own terms does not so limit the reach of Mrs. Bogdan's purported testimony. If allowed to stand, the testimony confuses the record and is inconsistent with Mrs. Bogdan's deposition testimony. The Court should strike this misleading and inaccurate testimony.

Finally, Mrs. Bogdan testified during her deposition that she believed her implant was faulty because it loosened so soon. (Ex. A. to Plaintiffs' Opposition at 26, ll. 14-24.) Again, without any reference to time, Mrs. Bogdan now testifies that she concluded the loosening was a "potential complication that sometimes occurs in the aftermath of such procedures." Plaintiffs again assert that the statement in the affidavit refers only to the time period when she was under the care of Dr. Moeckel. Again, no such temporal limitation is contained in the affidavit.

Looking through the smoke screen Plaintiffs are attempting to erect, a pattern emerges. Plaintiffs, not satisfied that Mrs. Bogdan's actual testimony can carry the day, are now attempting to restructure her testimony into a form that more closely fits the standard they believe they must meet to survive summary judgment. It is too late for Mrs. Bogdan to change her testimony now. The Court should strike paragraphs 6 and 7 of the new affidavit.

C.      **The Court Should Strike the Unauthenticated Document.**

Zimmer established in its opening memorandum that the unauthenticated document, Exhibit E to Plaintiffs' Opposition, should be stricken because Plaintiffs have not authenticated the document and it is not relevant to the statute of limitations issue. Setting aside for the moment Plaintiffs' argument on authentication, they have failed to establish that the alleged brochure is relevant in any way to the statute of limitations issue presented by Zimmer's Motion.

Plaintiffs argue without explanation that the brochure is relevant because it demonstrates a continuing course of conduct under which Zimmer continued to advertise the Centralign even after it allegedly knew of a defect. (Resp. at 11.) But the brochure does not bear any date on which it was created or circulated. (*See* Ex. E to Plaintiffs' Opposition.) Therefore, it cannot establish without accompanying testimony, which Plaintiffs have not offered, that Zimmer advertised the Centralign after it knew of an alleged defect. The brochure standing alone is not relevant to a continuing course of conduct argument.

Plaintiffs also argue the alleged brochure goes to Dr. Moeckel's state of mind. (Resp. at 11.) But Dr. Moeckel's state of mind is not at issue. The question presented is whether Mrs. Bogdan should have discovered actionable injury more than three years before she filed suit. What Dr. Moeckel believed or relied on is irrelevant. And Mrs. Bogdan could not testify that she decided not to learn the circumstances surrounding her implant's failure because she saw the alleged brochure. She testified in her deposition that she has no memory of ever seeing any sales literature from Zimmer. (Ex. A. to Plaintiffs' Opposition at 19 ll. 1 – 5.) Plaintiffs are trying through this alleged brochure to attribute knowledge to Mrs. Bogdan that she did not have.

With regard to Plaintiffs argument that the brochure is self authenticating under Fed. R. Evid. 901(b)(4) because it has distinctive characteristics, none of the cases cited by Plaintiffs

even apply Rule 901(b)(4). And the primary case on which they rely, *Knight v. Hartford Police Dept.*, No. 3:04CV969 (PCD), 2006 WL 1438649 (D. Conn. May 22, 2006), does not apply any section of Rule 901. Accordingly, Plaintiffs have offered no authority for the proposition that the brochure is self authenticating. The Court should strike the alleged brochure.

D.      **Dr. Moeckel's Affidavit Should Be Stricken.**

In its opening memorandum, Zimmer established that a treating physician cannot provide expert testimony without being qualified as an expert. *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 970 (10th Cir. 2001). Because Plaintiffs have not designated Dr. Moeckel as an expert, Zimmer has moved to exclude his veiled opinions asserting that the Centralign is defective. Plaintiffs do not dispute the law governing expert opinions offered by treating physicians. Instead, they contend that Dr. Moeckel is providing testimony based on his personal knowledge – not expert opinions regarding the design of the Centralign. (Resp. at 13.) The basis for their argument that the assertions are not opinions is that Plaintiffs have inserted the opinions in dependent clauses followed by what they claim are observations based on Dr. Moeckel's treatment of Mrs. Bogdan. However, when examined for what they are, the purported observations are irrelevant and serve no purpose other than to allow Dr. Moeckel to assert what he claims to have learned about the design of the Centralign.

For example, Dr. Moeckel's statement that he would not have used the Centralign had he known it was defective has no relevance to the discovery rule question. Why Dr. Moeckel picked the implant he picked is not relevant to when Mrs. Bogdan should have discovered actionable harm. Indeed, it is not relevant to any issue in this case. It is simply a conduit for Dr. Moeckel to tell the Court, and eventually the jury, that he believes the Centralign is defective. Likewise, Dr. Moeckel's statement that he had no reason to believe the Centralign was defective

8

until he "read publications that were critical of its design" is of no moment. Again, what Dr. Moeckel believed is not relevant. And Plaintiffs' repeated statements to the contrary do not change that fact. The Court should see Dr. Moeckel's affidavit for what it is – an attempt to introduce through the back door opinion evidence Plaintiffs know Dr. Moeckel cannot offer directly. The Court should strike the affidavit.

## CONCLUSION

For the reasons stated in this Reply and in Zimmer's opening memorandum, the Court should strike: (a) Exhibit B, the medical journal article authored by Dr. Richard Santore; (b) paragraphs 6 and 7 of Exhibit A, Mrs. Bogdan's Affidavit; (c) Exhibit E, the document that purports to be a Zimmer brochure; and (d) Exhibit G, the purported expert design opinions of Dr. Bruce H. Moekel.

Dated: July 7, 2006                         Respectfully submitted,

/s/     Albert J. Dahm
Albert J. Dahm (ct21710)
**DAHM & ELVIN, LLP**
9604 Coldwater Road, Suite 201
Fort Wayne, IN 46825
Telephone: (260) 497-6000
Facsimile: (260) 497-6019
E-mail: albert.dahm@dahmelvin.com

Francis H. Morrison, III (ct04200)
Robert E. Koosa (ct26191)
**DAY BERRY & HOWARD, LLP**
CityPlace I
Hartford, CT 06103-3499
Telephone: (860) 275-0100
Facsimile: (860) 275-0343
E-mail: fhmorrison@dbh.com
           rekoosa@dbh.com

Attorneys for Defendant Zimmer, Inc.

9

**CERTIFICATE OF SERVICE**

I hereby certify that on July 7, 2006 I electronically filed the foregoing ZIMMER, INC.'S **ZIMMER, INC.'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE PLAINTIFFS' EVIDENCE** with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

>Robert I. Reardon, Jr.
>The Reardon Law Firm, P.C.
>160 Hempstead Street
>P.O. Drawer 1430
>New London, Connecticut 06320

I further certify that on [] I have mailed by United States Mail the document to the following non-CM/ECF participants:

>None

>/s/    Albert J. Dahm
>Albert J. Dahm (ct21710)
>**DAHM & ELVIN, LLP**
>9604 Coldwater Road, Suite 201
>Fort Wayne, IN 46825
>Telephone: (260) 497-6000
>Facsimile: (260) 497-6019
>E-mail: albert.dahm@dahmelvin.com