Westlaw.

Not Reported in F.Supp.2d                                                                                                        Page 1
Not Reported in F.Supp.2d, 2005 WL 3263878 (W.D.Tenn.)

**(Cite as: 2005 WL 3263878 (W.D.Tenn.))**

▷
Only the Westlaw citation is currently available.

United States District Court,
W.D. Tennessee, Western Division.
**MEMPHIS PUBLISHING CO.**, Plaintiff,
v.
**NEWSPAPER GUILD OF MEMPHIS**, LOCAL 33091, Defendant.
**No. 04-2620 B/P.**

Nov. 30, 2005.

Glenn E. Plosa, The Zinser Law Firm, Memphis, TN, L. Michael Zinser, The Zinser Law Firm, Nashville, TN, for Plaintiff.

Barbara Camens, Barr & Camens, Washington, DC, Samuel Morris, Godwin Morris Laurenzi & Bloomfield, P.C., Memphis, TN, for Defendant.

ORDER GRANTING IN PART PLAINTIFF'S
MOTION TO STRIKE

PHAM, Magistrate J.

*1 Before the court is Plaintiff Memphis Publishing Company's Motion to Strike Supplemental Statement of Undisputed Facts in Opposition to Plaintiff's Motion for Summary Judgment and in Support of Defendant's Motion for Summary Judgment and Portions of Michael Burrell's Affidavit, filed on October 6, 2005 (dkt # 107). Defendant Newspaper Guild of Memphis Local 33091 filed its response on October 17. On October 18, the motion was referred to the Magistrate Judge for determination. For the following reasons, the motion is GRANTED in part and DENIED in part.

I. BACKGROUND
On December 5, 2000, Memphis Publishing Company ("MPC") and Newspaper Guild of Memphis Local 33091 ("the Guild") entered into a collective bargaining agreement ("CBA") that includes a mandatory arbitration requirement for all grievances. The CBA was to be effective for a four-year period between January 11, 2000 and January 10, 2004. The agreement also includes an "evergreen clause," which states that "[w]ithin sixty 60 days prior to the termination of this Agreement, the Publisher or the Guild may initiate negotiations for a new Agreement. The terms and conditions of the Agreement shall remain in effect during such negotiations."

Pursuant to the CBA, the Guild filed five demands for arbitration between January 11 and March 1, 2005, based on five unrelated grievances. MPC contends that it does not have to arbitrate these five grievances, and filed this declaratory action, seeking a judgment declaring that the agreement expired on January 10, 2004. The Guild argues that the evergreen clause, which provides for an automatic extension of the agreement, renders the CBA operative until a new agreement has been reached.

On September 1, 2005, the parties filed dueling motions for summary judgment. In its motion for summary judgment, MPC raised a defense that Article XVI of the parties' CBA makes the evergreen grievance non-arbitrable. [FN1] In response to this defense, the Guild filed a Supplemental Statement of Undisputed Facts in Opposition to Plaintiff's Motion for Summary Judgment and in Support of Defendant's Motion for Summary Judgment and an affidavit of Michael Burrell, International Representative of the Guild.

> FN1. MPC points specifically to the "renewal clause" in Article XVI, ¶ 2 of the CBA, which states: "Renewal of this Agreement shall not be a proper subject of the arbitration agreement."

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                        Page 2
Not Reported in F.Supp.2d, 2005 WL 3263878 (W.D.Tenn.)
**(Cite as: 2005 WL 3263878 (W.D.Tenn.))**

In the present motion, MPC asks the court to strike the Guild's Supplemental Statement of Undisputed Facts and the Burrell affidavit. MPC argues that by filing the supplemental statement without first receiving permission from the court, the Guild has not complied with the Local Rules. MPC argues further that the Burrell affidavit should be disregarded because its contents are irrelevant, Burrell lacks personal knowledge of the information that he states, and the affidavit contains hearsay. The Guild contends that its supplemental statement is necessary to respond to unanticipated legal issues raised by MPC in its motion for summary judgment.

II. ANALYSIS
A. Supplemental Statement of Undisputed Facts

As an initial matter, the court notes that both the Federal Rules of Civil Procedure and the Local Rules are silent as to whether a party may file a supplemental statement of undisputed facts after its initial motion for summary judgment. *See* Fed.R.Civ.P. 56 (setting forth requirements for summary judgment motions); L.R. 7.2(d) (same). Such filings have been met with mixed reaction by federal courts. *Compare Currier Buildings, Inc. v. Town of York,* No. 01-68, 2002 WL 1146773, at *5 (D.Me. May 30, 2002) (unpublished) (granting motion to strike supplemental statement of undisputed fact for offeror's failure to seek leave), *and Rathje v. Scotia Prince Cruises,* No. 01-123, 2001 U.S. Dist. LEXIS 21266, at *7 (D.Me. Dec. 20, 2001) (same), *and Viero v. Bufano,* 925 F.Supp. 1374, 1379-81 (N.D.Ill.1996) (disregarding supplemental statement of facts), *with Jones v. R.R. Donnelley & Sons Co.,* No. 96-C-7717, 1999 WL 33257839, at *3 (N.D.Ill. Feb.11, 1999) (unpublished) (recommending that motion to strike be denied, as "supplemental affidavit and appendix ... responds to matters placed in issue by the Plaintiffs in opposition to the Defendant's Partial Summary Judgment Motion"), *and Baugh v. City of Milwaukee,* 823 F.Supp. 1452, 1456-57 (E.D.Wis.1993) (denying motion to strike supplemental affidavit that provided basis for reply brief).

*2 Although some courts have held that new factual assertions raised in a reply brief supporting a motion for summary judgment should be disregarded in the absence of a request for leave, *see Currier Builders,* 2002 WL 1146773 at *5, this court agrees with the approach taken by the *Baugh* court. [FN2] In *Baugh,* the district court distinguished between reply filings that raise new evidence and reply filings that provide evidence to respond to an argument raised by the opposing party in its motion for summary judgment:

> FN2. The court notes that *Baugh* differs slightly from the present case, as the pertinent local rules in *Baugh* expressly permitted reply briefs to be filed in summary judgment motions, but was silent as to whether accompanying affidavits may also be filed in reply. Because this court has permitted reply briefs to be filed in summary judgment motions despite the Local Rules' silence on their propriety, this distinction is not dispositive.

> Where new evidence is presented in either a party's reply brief or affidavit in further support of its summary judgment motion, the district court should permit the nonmoving party to respond to the new matters prior to disposition of the motion ... or else strike that new evidence. But, where the reply affidavit merely responds to matters placed in issue by the opposition brief and does not spring upon the opposing party new reasons for the entry of summary judgment, reply papers--both briefs and affidavits--may properly address those issues.

*Baugh,* 823 F.Supp. at 1457.

This case presents the latter situation. The supplemental statement of undisputed facts and accompanying affidavit do not provide evidence for a new basis for summary judgment on behalf of the Guild. Rather, they are offered to rebut defenses raised in MPC's motion for summary judgment. *See Viero,* 925 F.Supp. at 1380 ("[I]f [plaintiff] has raised an issue not dealt with by defendants in their initial filing, it is appropriate for defendants to support their final response with properly admissible evidence.").

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                  Page 3
Not Reported in F.Supp.2d, 2005 WL 3263878 (W.D.Tenn.)
**(Cite as: 2005 WL 3263878 (W.D.Tenn.))**

The court concludes that the appropriate response to the Guild's supplemental filing is to deny MPC's motion to strike and allow the district court to consider the supplemental statement of undisputed facts in its determination of the parties' motions for summary judgment. The court notes that the Guild did not seek leave of court, but given this case's looming trial date of February 27, 2006, the interests of judicial economy are better served by excusing the Guild's failure to seek leave rather than granting MPC's motion without prejudice, only to have the parties resubmit their same briefs. [FN3] Thus, the filing is accepted, and the court DENIES MPC's motion to strike with respect to the supplemental statement of undisputed facts.

> FN3. A Joint Motion to Postpone the Pre-Trial Conference and Trial was filed on October 27, 2005, and was granted on November 1, 2005.

B. Affidavit of Michael Burrell

Because the court will permit the Guild's supplemental statement of undisputed facts to be considered by the district court, the court now considers the evidentiary source of the supplemental statement. *See Baugh,* 823 F.Supp. at 1456 ("It seems absurd to say that reply briefs are allowed but that a party is proscribed from backing up its arguments in reply with the necessary evidentiary material."). MPC argues that paragraphs 9 and 10 of the Burrell affidavit must be excluded because they contain material that is hearsay, irrelevant, and not based on personal knowledge.

*3 In paragraphs 9 and 10 of his affidavit, Burrell states the following:
> 9. It was the longstanding and open policy of TNG [The Newspaper Guild-CWA, AFL-CIO] to prohibit interest arbitration in TNG contracts. The TNG Constitution, in addressing collective bargaining on the part of TNG locals, for decades included a constitutional provision that expressly stated that no collective bargaining agreement "shall provide for renewal by arbitration." Based on my experience, TNG has always stated that the purpose of that constitutional provision was to prevent TNG locals from negotiating contract provisions that permit interest arbitration.
> 10. The TNG Collective Bargaining Program also long contained "model contract" language regarding grievance arbitration, which language similarly excluded from arbitration "the renewal of this contract." Based on my experience, TNG has always stated that the purpose of the model contract language--which precludes "contract renewal" by arbitration--was to prevent interest arbitration, consistent with the TNG constitutional provision on interest arbitration.

(Burrell Aff. at ¶ 9-10).

Federal Rule of Civil Procedure 56(e) provides that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Thus, an affidavit filed in support of a motion for summary judgment is subject to the restrictions of the Federal Rules of Evidence, and should not be considered if it is otherwise inadmissible.

The court finds that the Burrell affidavit is relevant and based on personal knowledge. Burrell has served as an International Representative for the Guild since 1994, and has been involved with bargaining and enforcing Guild contracts that are negotiated with employers. (Burrell Aff. at ¶ 2-3). As part of his employment with the Guild, Burrell assisted in negotiations with the MPC in 1999 and served as chief negotiator for the Guild in its most recent CBA between the parties, which includes the evergreen clause that is contested in this case. (Burrell Aff. at ¶ 3-4). Burrell, therefore, has personal knowledge of the Guild's intentions in negotiating and signing the current CBA, including its interpretation of the renewal and evergreen clauses at issue. Burrell's affidavit is both relevant and based on personal knowledge.

Portions of Burrell's affidavit, however, do contain hearsay. In paragraph 9, Burrell states: "TNG has always stated that the purpose of that constitutional provision was to prevent TNG locals from negotiating contract provisions that permit interest

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                                   Page 4
Not Reported in F.Supp.2d, 2005 WL 3263878 (W.D.Tenn.)

**(Cite as: 2005 WL 3263878 (W.D.Tenn.))**

arbitration." The Guild argues that this phrase is not offered for the truth of the matter asserted, but rather for the fact that such a purpose was in fact articulated by the Guild. The court disagrees. The Guild is offering Burrell's affidavit to support its argument that the renewal clause does not apply to the evergreen clause in dispute. The importance of the above quote is not that TNG has in fact made the statement, but rather TNG's interpretation of the provision at issue. Thus, the statement is being offered for the truth of the matter asserted and is properly considered hearsay. The court GRANTS MPC's motion to strike with respect to this particular statement.

*4 Likewise, the following statement in Burrell's Affidavit also contains hearsay: "Based on my experience, TNG has always stated that the purpose of the model contract language--which precludes 'contract renewal' by arbitration--was to preclude interest arbitration, consistent with the TNG constitutional prohibition on interest arbitration." Again, this statement is being offered to prove the meaning of the renewal clause. Thus, the court GRANTS MPC's motion to strike with respect to this particular statement.

III. CONCLUSION
For the reasons above, Plaintiff's Motion to Strike Supplemental Statement of Undisputed Facts in Opposition to Plaintiff's Motion for Summary Judgment and in Support of Defendant's Motion for Summary Judgment and Portions of Michael Burrell's Affidavit is GRANTED with respect to the statements previously identified as hearsay in paragraphs 9 and 10 in Burrell's Affidavit. Plaintiff's Motion is DENIED with respect to the supplemental statement of undisputed facts and the portions of Burrell's Affidavit not previously identified as containing hearsay statements.

MPC may file a statement disputing the facts in the Guild's supplemental statement within eleven (11) days from the date of this order.

IT IS SO ORDERED.

Not Reported in F.Supp.2d, 2005 WL 3263878 (W.D.Tenn.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                                    Page 1
Not Reported in F.Supp.2d, 2004 WL 2472223 (D.Conn.)
**(Cite as: 2004 WL 2472223 (D.Conn.))**

C

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Connecticut.
Julia JACKSON, Plaintiff
v.
NORWALK BOARD OF EDUCATION, et al,
Defendants
No. Civ.3:02CV1777(AHN).

Sept. 9, 2004.

Cynthia Renee Jennings, The Barrister Law Group, Bridgeport, CT, for Plaintiff.

Mark J. Sommaruga, Sullivan, Schoen, Campane & Connon, Hartford, CT, for Defendants.

*RECOMMENDED RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT*

FITZSIMMONS, Magistrate J.

I. *INTRODUCTION*

*1 Julia Jackson brought this five count action alleging employment discrimination on the basis of race and gender, and intentional and negligent infliction of emotional distress, against the Norwalk Board of Education ("the Board"); Louis LaBosco, Director of Human Resources for the Board; Dr. Norman Zamcheck, Principal of Briggs High School; Art Dooley, Security Coordinator for Norwalk High School; and Rick Follman, Housemaster of Norwalk High School. [FN1] In Count One, plaintiff claims the Board violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"). In Count Two, plaintiff claims the defendants violated her rights to Due Process and Equal Protection under the Fourteenth Amendment to the United States Constitution. [FN2] In Count Three, plaintiff claims that the Board violated her rights under the Connecticut Fair Employment Practices Act ("CFEPA"). Counts One and Three are claims against the Board only; Count Two is a claim against all defendants. Jurisdiction for Counts One and Two is predicated on 28 U.S.C. § 1331, the existence of a federal question. Count Three is predicated on 28 U.S.C. § 1367, this court's supplemental jurisdiction. Pending before the court is defendants' Motion for Summary Judgment on all counts. [Defs.' Mot. (Doc. # 30) ]. Plaintiff opposes the motion. [Pl.'s Mot. (Doc. # 35) ]. For the reasons that follow, summary judgment is GRANTED for all defendants on all counts.

FN1. The Court previously dismissed Count Four and Count Five (intentional and negligent infliction of emotional distress respectively) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. [Doc. # 24 at 7-9.]

FN2. In the plaintiff's Opposition to Defendant's Motion to Dismiss, the plaintiff withdrew her claim under the Due Process Clause, but maintained her claim under the Equal Protection Clause. [Doc # 22 at pp. 3-5.]

II. *STANDARD OF REVIEW*

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The burden of establishing that there are no genuine issues of material fact in dispute rests with the moving party. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                           Page 2

Not Reported in F.Supp.2d, 2004 WL 2472223 (D.Conn.)

**(Cite as: 2004 WL 2472223 (D.Conn.))**

L.Ed.2d 265 (1986); *Gallo v. Prudential Residential Servs., Ltd. P'ship,* 22 F.3d 1219, 1223 (2d Cir.1994). In assessing the record, the court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, even when facts are disputed, in order to defeat summary judgment, the nonmoving party must offer enough evidence to enable a reasonable jury to return a verdict in its favor. *Id.* at 248. If little or no evidence supports the non-moving party's case, there is no genuine issue of material fact and summary judgment may be appropriate. *Gallo,* 22 F.3d at 1223-24. Disputed facts that are not material to the issues in the case may not defeat summary judgment. *Hemphill v. Schott,* 141 F.3d 412, 416 (2d Cir.1988). *See also Anderson,* 477 U.S. at 247-248.

III. *UNDISPUTED FACTS* [FN3]

> FN3. The court notes that plaintiff did not comply with Local Rule 56(a)(3), (formerly Local Rule 9(c)). Local Rule 56(a)(3) states that each statement or denial of material fact in the non-moving party's Local Rule 56(a)(2) statement must be followed by specific citation to admissible evidence and/or an affidavit. Failure to supply specific citations may result in sanctions, including, when the opponent fails to comply, an order granting the motion. Despite counsel's error in this regard, the court will adjudicate the motion on its merits so that the plaintiff be fully heard on her claims.

The following facts are undisputed. [FN4]

> FN4. The following documents were considered: Pl.'s Local Rule 56(a)(3); Defs.' 56(a)1 Stat.; Pl.'s 9(c)2 Stat.; Pl.'s Second Am. Compl. ¶ 11; Defs.' Answer to Second Am. Compl. ¶ 11; AFSCME Local 1042 Contract; Jackson Dep.; Arbitration Award; CHRO Review.]

1. Plaintiff, Julia Jackson, an African-American female, was employed from on or about March 16, 2000 to June 16, 2000 as a security monitor at Briggs High School in Norwalk, Connecticut. [Pl.'s Second Am. Compl. ¶¶ 3, 6; Defs.' 56(a)1 Stat. ¶¶ 1,18; Pl.'s 9(c)2 Stat. ¶¶ 1, 18.]

*2 2. The job posting for the Security Monitor position indicated that the position required twenty-seven and a half hours per week, and that there would be no benefits provided. [Defs.' 56(a)1 Stat. ¶ 3; Pl.'s 9(c)2 Stat. ¶ 3.]

3. The decision to hire plaintiff was made by Principal Norman Zamcheck and Louis LaBasco, Director of Human Resources, after a committee including Principal Zamcheck interviewed plaintiff. [Defs.' 56(a)1 Stat. ¶ 4; Pl.'s 9(c)2 Stat. ¶ 4.]

4. Plaintiff reported to and was supervised on a daily basis by Principal Zamcheck. Plaintiff was also supervised by Art Dooley, Head of Security. [Defs.' 56(a)1 Stat. ¶¶ 11-12; Jackson Dep. at 25-26.]

5. As a new employee of the Board, plaintiff was subject to a ninety-day probationary period. [FN5] The AFSCME Local 1042 contract states the probationary period is a "break-in time" during which the employer (the Board) may dismiss an employee without further recourse on the employee's part. The contract also indicates that all employees who work successfully for ninety days shall be known as permanent employees. [Pl.'s Second Am. Compl. ¶ 11; Defs.' Answer to Second Am. Compl. ¶ 11; AFSCME Local 1042 Contract at 17-18.]

> FN5. Although the plaintiff asserts in her 9(c)2 statement that the ninety-day probation period is not mentioned in the Local 1042 Contract Book, the probation period is clearly noted on page 17 of the contract. [Pl.'s 9(c)2 Stat. ¶ 1; AFSCME Local 1042 Contract at 17.]

6. Briggs High School is an "alternative" high school. Students are enrolled at Briggs High School because they did not function appropriately in the regular high school environment. Many of the students had discipline

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                  Page 3
Not Reported in F.Supp.2d, 2004 WL 2472223 (D.Conn.)

**(Cite as: 2004 WL 2472223 (D.Conn.))**

problems, were expelled from regular public school or were involved in the juvenile court system. Briggs High School has fewer students than other high schools in Norwalk, and a shortened day that ends at 12:45 p.m. [Defs.' 56(a)1 Stat. ¶ 2; Pl.'s 9(c)2 Stat. ¶ 2; Jackson Dep. at 86.]

7. Plaintiff was the only security monitor at Briggs High School. Her main duties were to supervise students inside and outside the school, to ensure the safety of students and staff, and to protect the school's property. Plaintiff's position required her to patrol the hallways and school grounds and to supervise students as they passed between classes. [Defs.' 56(a)1 Stat. ¶ 5; Pl.'s 9(c)2 Stat. ¶ 5; AFSCME Local 1042 Contract App. at 17a.]

8. Plaintiff was not provided with a walkie-talkie or a uniform. [Defs.' 56(a)1 Stat. ¶¶ 8-9; Pl.'s 9(c)2 Stat. ¶ 9.]

9. Most security monitors at other schools in Norwalk worked with walkie-talkies. At the time plaintiff was hired, Briggs High School had no functional walkie-talkies. The current security monitor at Briggs High School does not use a walkie-talkie. [Defs.' 56(a)1 Stat. ¶ 9; Pl.'s 9(c)2 Stat. ¶ 9.]

10. The job posting for the position indicated that a uniform was required, but as a practice, a uniform was not mandatory until an employee successfully completed the probationary period. The uniform requisition process required an employee to purchase the uniform from an approved vendor and then the Board reimbursed the employee. [Defs.' 56(a)1 Stat. ¶ 8; Pl.'s 9(c)2 Stat. ¶ 8.]

*3 11. On June 6, 2000, plaintiff and Principal Zamcheck met and discussed her performance. During the meeting, plaintiff was shown a copy of her performance evaluation. Plaintiff read and signed the evaluation. [Defs.' 56(a)1 Stat. ¶ 13; Jackson Dep. at 32-33.]

12. Plaintiff's evaluation noted that plaintiff did not sufficiently cover the area between (the school's) buildings or control the students during break times. In addition, it indicated that plaintiff became "overly excited and stressed" with students and that she was not able to control the students. Plaintiff received unsatisfactory markings in the categories of "recognizes others' priorities" and being "proactive." The recommendation of the evaluation was to not rehire plaintiff for the 2000-2001 school year. [Defs.' 56(a)1 Stat. ¶ 14; Pl.'s 9(c)2 Stat. ¶ 14; Jackson Dep. at 34-36.]

13. Following the performance evaluation, Principal Zamcheck and Mr. LaBosco decided to not rehire plaintiff for the 2000-2001 school year. [Defs.' 56(a)1 Stat. ¶¶ 15, 17; Pl.'s 9(c)2 Stat. ¶¶ 15, 17.]

14. By a letter dated June 6, 2000, Mr. LaBosco informed plaintiff that her probationary period had expired and that her employment would not be renewed for the 2000-2001 school year. [Defs.' 56(a)1 Stat. ¶ 15; Pl.'s 9(c)2 Stat. ¶ 15.]

15. Plaintiff remained in the security monitor position until June 16, 2000, the end of the school year. [Defs.' 56(a)1 Stat. ¶ 18; Pl.'s 9(c)2 Stat. ¶ 18.]

16. On June 16, 2000, Principal Zamcheck met with plaintiff and Local 1042 President John Mosby to discuss the June 6, 2000, evaluation of plaintiff. [Defs.' 56(a)1 Stat. ¶ 20; Pl.'s 9(c)2 Stat. ¶ 20.]

17. During the June 16, 2000, meeting Principal Zamcheck explained that he thought plaintiff was not suited for the security monitor position because she was "too nice" and not "tough enough". [Defs.' 56(a)1 Stat. ¶ 21; Pl.'s 9(c)2 Stat. ¶ 21.]

18. Principal Zamcheck changed his evaluation of plaintiff to reflect satisfactory marks; however, the decision to not renew plaintiff's employment was never changed. [Defs.' 56(a)1 Stat. ¶ 23; Pl.'s 9(c)2 Stat. ¶ 23.]

19. Throughout plaintiff's employment at Briggs High School, she had no arguments or problems with any of the defendants. [Defs.' 56(a)1 Stat. ¶¶ 24-25; Pl.'s 9(c)2 Stat. ¶¶ 23-25.]

20. On July 27, 2000, plaintiff applied for a security monitor position at Norwalk High School. [Defs.' 56(a)1 Stat. ¶ 27; Pl.'s 9(c)2 Stat. ¶ 27.]

21. Art Dooley, Head of Security, and Richard Follman, Housemaster of Norwalk High School, interviewed plaintiff in early August. Art Dooley

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                       Page 4
Not Reported in F.Supp.2d, 2004 WL 2472223 (D.Conn.)
**(Cite as: 2004 WL 2472223 (D.Conn.))**

is of African-American descent. [Defs.' 56(a)1 Stat. ¶ 28; Pl.'s 9(c)2 Stat. ¶ 28.]

22. Other interviewees included Tia Perry, an African-American female; Deon Hardison, an African-American male; and James Dupre, an African-American male. [Defs.' 56(a)1 Stat. ¶ 29; Pl.'s 9(c)2 Stat. ¶ 29.]

*4 23. Mr. Dooley and Mr. Follman selected Tia Perry, an African-American female, for the security monitor position at Norwalk High School. [Defs.' 56(a)1 Stat. ¶ 32; Dooley Aff. ¶ 20.]

24. The Board currently employs and has previously employed minorities to work as monitors and security guards. [Defs.' 56(a)1 Stat. ¶ 34; Pl.'s 9(c)2 Stat. ¶ 34.]

25. The Board has a practice of giving current employees or employees who have been laid off first consideration for job postings. [Defs.' 56(a)1 Stat. ¶ 30; Pl.'s 9(c)2 Stat. ¶ 30.]

26. Plaintiff brought a grievance as a member of Local 1042, AFSCME, claiming that she was unjustly denied the Norwalk High School security monitor position. The arbitration award concluded that the plaintiff had no status that entitled her to be given first consideration for the position. [Defs.' 56(a)1 Stat. ¶ 31; Pl.'s 9(c)2 Stat. ¶ 31; Arbitration Award at 2.]

27. On September 13, 2000, plaintiff filed a complaint against the Board with the Connecticut Commission on Human Rights and Opportunities ("CHRO"), alleging race and gender discrimination. The CHRO dismissed the plaintiff's claim pursuant to the Merit Assessment Review ("MAR") process, on the grounds that there was no reasonable possibility that further investigation would result in a finding of reasonable cause. Plaintiff's request for reconsideration was also rejected. [Defs.' 56(a)1 Stat. ¶ 33; Pl.'s 9(c)2 Stat. ¶ 33; CHRO Review at 1-3.]

IV. *DISCUSSION*

A. *Title VII and Connecticut Fair Employment Practices Act Claims--Briggs High School* [FN6]

FN6. Connecticut courts look to federal law for guidance in enforcing Connecticut's anti-discrimination statute, the Connecticut Fair Employment Practices Act ("CFEPA"), and the analysis of a discrimination claim is the same under both. *Craine v. Trinity College,* 259 Conn. 625, 637, 791 A.2d 518 (2002); *State of Conn. v. Comm'n on Human Rights and Opportunities,* 211 Conn. 464, 470, 559 A.2d 1120 (1989); *Grey v. City of Norwalk Board of Education,* 304 F.Supp.2d 314, 328 (D.Conn.2004). Therefore this court will analyze plaintiff's Title VII and CFEPA claims in concert.

Under Title VII, it is unlawful for employers to discharge, fail to hire, or otherwise discriminate against any individual on the basis of his or her race, color or sex. 42 U.S.C. § 2000e-2(a)(1). Analysis of a plaintiff's discrimination claim involves the well-established three-part burden-shifting test of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 677 (1973). The first part of the test requires a plaintiff to establish, by a preponderance of evidence, a prima facie case of racial discrimination. *Id.* This may be done by showing (i) that she is a member of a protected class; (ii) that she was competent and was qualified in her job or for the position to which she applied; (iii) she suffered an adverse employment decision or action; (iv) and the decision or action occurred under circumstances giving rise to an inference of discrimination. *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *Rexach,* 2004 U.S. Dist. LEXIS 6231, at *9. If a plaintiff is able to establish a prima facie case of discrimination, the burden then shifts to the employer to provide legitimate nondiscriminatory reasons for the employee's rejection. *McDonnell Douglas Corp.,* 411 U.S. at 802. However, even if the defendant is able to establish legitimate nondiscriminatory reasons for the employee's rejection, the plaintiff is given an opportunity to demonstrate that the defendant's reason for rejection was a pretext for discrimination. *Id.* at 804-05. For the case to continue, plaintiff must produce not simply "some" evidence, but rather, "sufficient evidence to support

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                        Page 5
Not Reported in F.Supp.2d, 2004 WL 2472223 (D.Conn.)
**(Cite as: 2004 WL 2472223 (D.Conn.))**

a rational finding that the legitimate non-discriminatory reasons proffered by the defendant were false, and that more likely than not discrimination was the real reason for the adverse employment action." *Weinstock v. Columbia University,* 224 F.3d 33, 42 (2d Cir.2000).

*5 A plaintiff's burden of establishing the first part of the test, proving a prima facie case of employment discrimination, is "minimal". *Collins v. New York City Transit Auth.,* 305 F.3d 113, 118 (2d Cir.2002). In addition, the prima facie requirement in a given case will depend on the specific facts in question, because facts vary in different employment cases. *McGuinness v. Lincoln Hall,* 263 F.3d 49, 54 (2d Cir.2001) (citing *McDonnell Douglas Corp.,* 411 U.S. at 802).

An inference of discrimination may arise if a plaintiff can show that she was treated differently than similarly situated employees of a different race or gender. *Shumway v. United Parcel Service,* 118 F.3d 60, 63 (2d Cir.1997); *Diggs v. Town of Manchester,* 303 F.Supp.2d 163, 176 (D.Conn.2004). A plaintiff must show that she shared sufficient employment characteristics with the comparator so that they may be similarly situated. *McGuinness,* 263 F.3d at 53. To be similarly situated, the individuals with whom the plaintiff compares herself must be similarly situated in all material respects. *Shumway,* 118 F.3d at 64. An employee is similarly situated in all material respects when an employee has a situation sufficiently similar to the plaintiff's to support at least a minimal inference that the difference in treatment may be attributable to discrimination. *McGuinness,* 263 F.3d at 54. What constitutes "all material respects" is judged partly on whether the plaintiff and those with whom she compares herself were subject to the same workplace standards. *Etienne v. Wal-Mart Stores, Inc.,* 186 F.Supp.2d 129, 135 (D.Conn.2001) (citing *Norville v. Staten Island Univ. Hosp.,* 196 F.3d 89, 96 (2d Cir.1999)).

The plaintiff has satisfied the first and third elements of the *McDonnell Douglas* test. Defendants assert that plaintiff has not satisfied the second element of the test, because they claim that plaintiff's job performance was unsatisfactory. It is undisputed that plaintiff signed her performance evaluation, which indicated unsatisfactory marks and noted that she did not sufficiently cover the area between (the school's) buildings, or control the students during break times, and that she became "overly excited and stressed" with students. [Defs.' 56(a)1 Stat. ¶ 13; Jackson Dep. at 32-33.] Still, plaintiff claims that she did not agree with the evaluation. [Defs.' 56(a)1 Stat. ¶ 14; Pl.'s 9(c)2 Stat. ¶ 14; Jackson Dep. at 34-36.] In addition, Principal Zamcheck later changed his evaluation of plaintiff to reflect satisfactory marks after meeting with plaintiff and Local 1042 President John Mosby, even though the decision to not renew plaintiff's employment was never changed. [Defs.' 56(a)1 Stat. ¶¶ 20, 23; Pl.'s 9(c)2 Stat. ¶¶ 20, 23.] However, bearing in mind that all inferences must be drawn in favor of plaintiff, the court will assume that plaintiff has satisfied the second element of the *McDonnell Douglas* test.

*6 Plaintiff asserts that she satisfies the fourth element of the *McDonnell Douglas* test because she was treated differently than similarly situated white male employees in the following ways: plaintiff was forced to eat lunch after school; she was not given a walkie-talkie; she was not provided with a uniform; she was not granted a hearing before being terminated; she worked thirty hours per week and was denied benefits; she did not receive the Local 1042 Contract book; and she was not informed of the ninety-day probationary period.

For each of these claims, however, plaintiff has not identified the group of employees to whom she compares herself. She has not identified in her opposition memorandum nor in her sole affidavit any individuals similarly situated to her who were treated differently in the ways she alleges. She has failed to offer any evidence that supports her claims of disparate treatment. For these reasons, plaintiff has not met her prima facie burden to demonstrate that her non-renewal at Briggs and the rejection of her application to Norwalk High School occurred under circumstances giving rise to an inference of discrimination.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  Page 6

Not Reported in F.Supp.2d, 2004 WL 2472223 (D.Conn.)

**(Cite as: 2004 WL 2472223 (D.Conn.))**

First, plaintiff claims that she was forced to eat lunch after school while other Norwalk security monitors were permitted to take a lunch break during the school day. [Doc. # 36 at 9.] This claim fails to support an inference of discrimination because plaintiff was not similarly situated to any other security monitors in Norwalk in respect to the lunch hour. Briggs High School has a shortened day that ends at 12:45 p.m., and plaintiff ate lunch at the same time as the rest of the staff at Briggs, at the end of the school day.

Plaintiff asserts that, unlike other monitors in Norwalk, she was denied the use of a walkie-talkie. [Doc. # 36 at 8-9.] Defendants assert that this is not evidence of disparate treatment because the walkie-talkies at Briggs were either broken or stolen; plaintiff was the only monitor at Briggs and had no need for a walkie-talkie; plaintiff's replacement did not have the use of the walkie-talkie; and plaintiff did not request a walkie-talkie. [Doc. # 31.] Plaintiff does not dispute that there are no functional walkie-talkies at Briggs or that the current monitor at Briggs does not use a walkie-talkie [Pl.'s 9(c)2 Stat. ¶ 9], and does not claim that she requested a walkie-talkie and was refused. Under these circumstances, the court agrees with defendants that plaintiff was not similarly situated with respect to other monitors who were provided with walkie-talkies within the Norwalk school system.

Plaintiff also asserts that, unlike other monitors, she was not provided with a uniform. [Doc. # 36 at 8.] In practice, however, a uniform is only required for permanent employees. [Defs.' 56(a)1 Stat. ¶ 8; Pl.'s 9(c)2 Stat. ¶ 8.] The uniform requisition process requires an employee to purchase the uniform from an approved vendor and then be reimbursed by the employer. [*Id.*] Plaintiff has provided no evidence that she sought and was denied reimbursement for a uniform, or that other probationary employees were provided with a uniform under differing circumstances.

*7 Plaintiff claims that, unlike others similarly situated, she was not granted a hearing prior to the non-renewal of her employment. [Doc. # 26 ¶ 19.] Plaintiff's evidence is an affidavit by John Mosby stating generally that other white male probationary employees were given a hearing, with their union representative present, prior to termination. [Aff. John Mosby ¶ 9.] The affidavit, however, fails to identify any individuals who were granted such a hearing. Plaintiff also acknowledges that she did have a meeting concerning her non-renewal on June 6, 2000, at which she discussed her performance and evaluation. [Pl.'s Material Facts in Dispute ¶ 6.] A second meeting among plaintiff, John Mosby, and Principal Zamcheck occurred on June 16, 2000, at the end of her probationary period, to discuss plaintiff's non-renewal. However, the decision not to renew plaintiff's employment was not changed. Because plaintiff was granted two meetings, one at which a union representative was present, she was not treated differently than other probationers prior to the non-renewal of her employment at Briggs. [FN7]

> FN7. Plaintiff raises an issue that, unlike the version of the performance evaluation submitted by plaintiff, the version submitted by the defendants does not contain plaintiff's handwritten statement at the bottom stating that she did not agree with the contents of the evaluation. Plaintiff does not contend, however, that the text of the two versions was otherwise inconsistent, nor does she dispute that she signed the evaluation. Because there is no dispute about the actual text of the evaluation, the fact that the defendants' version does not reflect plaintiff's comment is immaterial.

Plaintiff claims that, although her position required her to work twenty-seven and a half hours per week, she actually worked thirty hours per week, and that white male employees who worked thirty hours or more per week were given benefits, which she was denied. [Doc. # 26 ¶ 7-10.] However, pursuant to the Local 1042 contract, only employees who work forty hours or more per week are entitled to benefits. [AFSCME Local 1042 Contract at 2, 21.] Thus, even if plaintiff worked thirty hours per week, she would not have been entitled to benefits.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                          Page 7
Not Reported in F.Supp.2d, 2004 WL 2472223 (D.Conn.)
**(Cite as: 2004 WL 2472223 (D.Conn.))**

Plaintiff provided no evidence that similarly situated white male probationary employees who worked thirty hours per week were provided with benefits.

Plaintiff claims that, unlike similarly situated white male employees, she did not receive the Local 1042 contract book [Pl.'s Material Facts in Dispute ¶ 7], and was not informed in writing of the ninety-day probationary period. [Pl.'s Second Am. Compl. [Doc. # 26] ¶ 12; Doc. # 36 at 5.] Plaintiff proffers no evidence showing other security monitors received the contract book. Her only evidence concerning notice of the probationary period is the Mosby affidavit, which states generally that "custodians, maintenance workers, truck drivers, and asst head custodians" were notified in writing of the probationary period. [AFSCME Local 1042 Contract at 17; Aff. John Mosby ¶ 8.] Aside from this general assertion, the affidavit does not offer any specific names of persons similarly situated to plaintiff who received such written notice, and is not sufficient proof of the alleged disparate treatment.

Although plaintiff's burden is minimal, she has failed to offer any evidence showing she was treated differently than similarly situated employees which raises an inference of discrimination sufficient to satisfy the fourth element of the *MacDonnell Douglas* test.

*8 In some situations, however, a plaintiff may establish the inference of discriminatory intent without alleging disparate treatment. The inference of discriminatory intent could be drawn in several circumstances including, but not limited to: the employer's continuing after discharging the plaintiff, to seek applications from persons with the plaintiff's qualifications to fill the position; or the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge. *Adbu-Brisson v. Delta Air Lines, Inc.,* 239 F.3d 456, 468 (2d Cir.2001); *Chambers v. TRM Copy Ctrs. Corp.,* 43 F.3d 29, 37 (2d Cir.1994). Plaintiff appears to argue that further evidence raising an inference of discrimination exists, yet proffers no such evidence. She asserts that there was a positive evaluation prior to the June 6, 2000 letter, but has not provided a copy nor any other evidence of a prior positive evaluation. Additionally, contrary to plaintiff's assertion, the fact that the June 6, 2000 non-renewal letter does not specifically cite performance reasons for plaintiff's discharge does not raise an inference of discrimination because plaintiff was already aware of the proffered reasons as a result of the meeting and the signed evaluation, even if she disagreed with these reasons.

In addition, when the same person made the decision to hire and fire, and when the termination of employment occurs within a relatively short period of time, it is difficult to infer an invidious motive that would be consistent with an inference of discrimination, given that the plaintiff's race and gender were clearly known by that person at the time of hire. *See Schnabel v. Abramson,* 232 F.3d 83, 91 (2d Cir.2000)(the fact that the same person hired and fired plaintiff is highly relevant in showing age discrimination unlikely); *Proud v. Stone,* 945 F.2d 796, 797 (4th Cir.1991) ("it hardly makes sense to hire workers from a group one dislikes only to fire them once they are on the job"). In this case, the decision not to renew the plaintiff's employment was made by the same individuals who hired plaintiff, Principal Zamcheck and Mr. LaBasco, less than three months after she was hired. These facts further undermine plaintiff's claim of race and gender discrimination.

Because the plaintiff has failed to offer any evidence in support of her claim, the defendants' Motion for Summary Judgment with respect to her employment at Briggs High School is GRANTED.

B. *Title VII and CFEPA Claims -Norwalk High School*

Under Title VII, a plaintiff makes out a prima facie case for disparate treatment in hiring by showing (1) that she is a member of a protected class; (2) that

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                          Page 8
Not Reported in F.Supp.2d, 2004 WL 2472223 (D.Conn.)
**(Cite as: 2004 WL 2472223 (D.Conn.))**

she actually applied for the position sought and was qualified; (3) that she was not hired; and (4) that the position remained open or was filled by a person not a member of plaintiff's protected class. *McCall v. City of Danbury,* 116 F.Supp.2d 316, 319 (D.Conn.2000) (citing *McDonnell Douglas Corp.,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668). Plaintiff fails to make out a prima facie case for disparate treatment in hiring because the candidate selected for the position, Tia Perry, is an African-American female, a member of the plaintiff's protected class. Defendants' Motion for Summary Judgment with respect to the Norwalk High School position is GRANTED.

C. *Equal Protection Claims*

*9 In Count Two, plaintiff makes a claim pursuant to 42 U.S.C. § 1983, 42 U.S.C. §§ 2000e, et seq. that the defendants violated her rights to Equal Protection under the Fourteenth Amendment to the United States Constitution. Section 1983 provides that if any person, acting under color of state law, deprives another person of a right, privilege or immunity secured by the Constitution or federal laws, that person shall be liable to the party injured. 42 U.S.C. § 1983. Section 1983 does not create substantive rights, but it provides a means to address the deprivation of a federal right guaranteed elsewhere. *Diggs,* 303 F.Supp.2d at 182. It is unclear from plaintiff's memorandum whether her equal protection claim is based upon race and/or gender discrimination or on membership in a "class of one". Under either analysis, plaintiff's claim fails.

Employment discrimination claims under § 1983 based on race or gender are subject to the same *McDonnell Douglas* burden shifting analysis as claims brought under Title VII. *Sorlucco v. New York City Police Dep't,* 888 F.2d 4, 7 (2d Cir.1989). As previously discussed, plaintiff failed to make a prima facie showing of discrimination in the non-renewal of her employment at Briggs High School, or in the rejection of her application for the Norwalk High School position. Therefore, if the plaintiff's Equal Protection claim is predicated on race or gender, her claim fails.

In addition, plaintiff has not provided sufficient evidence to withstand summary judgment in regards to an Equal Protection "class of one" claim. In order to establish a cause of action under the Equal Protection clause based on a "class of one", a plaintiff must demonstrate that she is the victim of intentional and arbitrary discrimination, in that she has been intentionally treated differently than from others similarly situated, and that there is no rational basis for the difference in treatment. *Lyon v. Jones, Edwards, Reynolds, and Office of the Attorney General,* 260 F.Supp.2d 507, 513 (D.Conn.2003), citing *Village of Willowbrook v. Olech,* 528 U.S. 562, 564-65, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000). Where plaintiff does not claim selective treatment based on race or gender, the plaintiff must demonstrate that the defendants had a "malicious intent to injure" the plaintiff. *Crowley v. Courville,* 76 F.3d 47, 52-53 (1996). A demonstration of different treatment from persons similarly situated, without more, does not suffice to establish malice or bad faith. *Id.*

Plaintiff has not provided any evidence from which a reasonable jury could possibly find that she was intentionally treated differently than similarly situated employees, and that such treatment is indicative of discrimination. Plaintiff has not provided any evidence of vindictive action, illegitimate animus, or ill will on the part of defendants. There is no evidence that the defendants' actions were irrational and wholly arbitrary. Plaintiff has provided no evidence of malice, nor has she provided evidence that the defendants intentionally singled her out for different treatment. Thus, if the plaintiff's claim is predicated on a "class of one", her claim fails.

*10 Therefore, defendants' Motion for Summary Judgment on Count Two is GRANTED.

V. *Conclusion*

For the reasons discussed above, the defendants' Motion for Summary Judgment [Doc. # 30] on all counts is GRANTED.

Any objection to this recommended ruling must be

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                Page 9
Not Reported in F.Supp.2d, 2004 WL 2472223 (D.Conn.)
**(Cite as: 2004 WL 2472223 (D.Conn.))**

filed with the Clerk of the Court within ten (10) days of the receipt of this order. Failure to object within ten (10) days may preclude appellate review. *See* 28 U.S.C. § 636(b)(1); Rules 72, 6(a) and 6(e) of the Federal Rules of Civil Procedure; Rule 2 of the Local Rules for United States Magistrates; *Small v. Secretary of H.H.S.,* 892 F.2d 15 (2d Cir.1989) (per curiam); *F.D.I.C. v. Hillcrest Assoc.,* 66 F.3d 566, 569 (2d Cir.1995).

Not Reported in F.Supp.2d, 2004 WL 2472223 (D.Conn.)

**Motions, Pleadings and Filings (Back to top)**

• 3:02CV01777 (Docket) (Oct. 08, 2002)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.