UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| STACIA S. BOGDAN and | : | |
| FRANK BOGDAN | : | |
|     Plaintiffs, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 3:02-cv-637(JCH) |
| ZIMMER, INC. | : | |
|     Defendant. | : | October 13, 2006 |

**RULING RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 27), DEFENDANT'S MOTION TO STRIKE PLAINTIFFS' EVIDENCE (Doc. No. 42), and DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S LOCAL RULE 56(a)2 STATEMENT (Doc. No. 44)**

The plaintiffs, Stacia S. Bogdan and Frank Bogdan, bring this action against the defendant, Zimmer, Inc ("Zimmer"), alleging a violation of the Connecticut Product Liability Act, Conn. Gen. Stat. §52-572m, et seq. ("CPLA"), and a derivative claim for loss of consortium. Zimmer has moved for summary judgment on the Bogdans' claims, pursuant to Rule 56 of the Federal Rules of Civil Procedure. The basis of Zimmer's Motion for Summary Judgment (Doc. No. 27) is that the Bogdans' are barred from bringing their products liability claim by the CPLA's statute of limitations. Zimmer also moves to strike the Bogdans' Local Rule 56 Statement and certain pieces of evidence that the Bogdans have submitted in opposition to summary judgment.

For the following reasons, Zimmer's Motion for Summary Judgment and Motions to Strike are denied.

**I.      STANDARD OF REVIEW**

In a motion for summary judgement, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); White v. ABCO Engineering Corp., 221 F.3d 293, 300 (2d Cir. 2000). Once the moving party has met its burden, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," Anderson, 477 U.S. at 255, and present such evidence as would allow a jury to find in his favor in order to defeat the motion. Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).

In assessing the record, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgement is sought. Anderson, 477 U.S. at 255; Graham, 230 F.3d at 38. "This remedy that precludes a trial is properly granted only when no rational finder of fact could find in favor of the non-moving party." Carlton v. Mystic Transp., Inc., 202 F.3d 129, 134 (2d Cir. 2000). "When reasonable persons, applying the proper legal standards, could differ in their responses to the question" raised on the basis of the evidence presented, the question must be left to the jury. Sologub v. City of New York, 202 F.3d 175, 178 (2d Cir. 2000).

II. **FACTS**[1]

On October 6, 1994, Ms. Bogdan had her right hip replaced by her physician, Dr. Bruce H. Moeckel. Dr. Moeckel elected to use a Zimmer Centralign Precoat, size 2 femoral stem to perform the operation. Ms. Bogdan expected the Centralign replacement to last ten years. Local Rule 56(a)(1) Statement at ¶ 9 (Doc. No. 27). Within one year of the surgery, Ms. Bogdan reported to Dr. Moeckel that she had again begun to experience pain in her right hip. During an October 18, 1995 visit, Dr. Moeckel informed Ms. Bogdan's that the renewed pain was likely due to a loosening of her hip replacement. Id. at ¶ 18. Further visits over the next half year by Ms. Bogdan to Dr. Moeckel strengthened Dr. Moeckel's conclusion that Ms. Bogdan's continuing pain resulted from the early loosening of her hip implant.

On April 15, 1996, with Ms. Bogdan's pain gradually increasing, Dr. Moeckel informed Ms. Bogdan that she required revision surgery on the prosthesis to replace it with another device. Local Rule 56(a)(1) Statement at ¶ 28. During this visit, Ms. Bogdan asked Dr. Moeckel about why her original device had failed. Local Rule 56(a)(1) Statement at ¶ 29; Bogdan Aff. at ¶ 6 (Exh. A to Pl. Opp. (Doc. No. 40)). Based on the parties' submissions, Dr. Moeckel either "did not have a good explanation," or "simply replied that he did not have an explanation to give her."

---

[1] For the purposes of the instant motion, the court accepts as true facts undisputed by the parties and resolves disputed facts in favor of the Bogdans where they provide evidence to support their allegations. The court also notes that there have been two decisions - one by this court and one by the Second Circuit - detailing facts in this case as they relate to Zimmer's Motion for Summary Judgment. See Bogdan v. Zimmer, Inc., 165 Fed.Appx. 883 (2d Cir. 2006); Dunn v. Zimmer, Inc., 2005 WL 752214 (D.Conn. Mar. 29, 2005). As such, the court assumes the parties' familiarity with the basic facts of this case, and will only discuss those facts necessary to resolve the issue at hand.

Compare Local Rule 56(a)(1) Statement at ¶ 30 (quoting Moeckel Dep. Tr. at 55 (Exh. C. to Local Rule 56(a)(1) Statement)) with Bogdan Aff. at ¶ 6. Ms. Bogdan ultimately decided to follow Dr. Moeckel's device and underwent a revision surgery on July 16, 1996. Local Rule 56(a)(1) Statement at ¶ 34.

Sometime in November 2001, Dr. Moeckel called Ms. Bogdan and told her that there "had been some other problems with this prosthesis and there was a class action lawsuit." Local Rule 56(a)(1) Statement at ¶ 37 (quoting Moeckel Dep. Tr. at 26). Ms. Bogdan subsequently filed this action on April 10, 2002.

### III. DISCUSSION

#### A. Zimmer's Motion to Strike the Bogdans' Local Rule 56(a)(2) Statement

Zimmer urges this court to strike the Bogdans' entire Local Rule 56(a)(2) statement, deem the facts outlined in its Local Rule 56(a)(1) Statement as admitted, and grant summary judgment. Zimmer correctly notes that the Bogdans did not submit their Rule 56 Statement with their Memorandum in Opposition, which was filed on May 17, 2006. In fact, the Bogdans did not submit their Rule 56 Statement until June 2, 2006, two days after Zimmer submitted its Reply.

The Bogdans' actions, according to Zimmer, enabled them to tailor their Rule 56 Statement with the benefit of having seen Zimmer's Reply. Zimmer also claims that the Bogdans deprived it of a meaningful opportunity to respond to the factual issues raised by the Bogdans in their Rule 56 Statement. Beyond these general averments, however, Zimmer has not specifically set out how it is prejudiced or otherwise disadvantaged by the Bogdans' late filing. The court further notes that the parties have

4

already litigated one summary judgment in this matter.  See Dunn v. Zimmer, 2005 WL 752214 (D.Conn. 2005) (Squatrito, J.).  Also, it does not appear from the parties' submissions that the Bogdans' Rule 56 Statement presented any argument or factual contention not already advanced in the Bogdans' Opposition.  Without any showing of actual harm to Zimmer, the court will not take the drastic step of granting summary judgment based solely on the tardy submission of a Rule 56 Statement.[2]

### B. Zimmer's Motion to Strike the Bogdans' Evidence

Zimmer next requests that this court strike a number of items that the Bogdans' submitted as evidence in connection with their Opposition.  The only challenge relevant to the court's present Ruling, and thus the only challenge the court will address at this time, is Zimmer's attempt to strike certain paragraphs in the affidavit Ms. Bodgan submitted in support of the Bogdans' Opposition.  Zimmer argues that each of the relevant statements in Ms. Bogdan's affidavit directly contradict statements that she made in her earlier deposition.  The court finds no such contradictions.

Paragraph Six of Ms. Bogdan's affidavit, in which she states that Dr. Moeckel gave her no reason to suspect that her prosthetic hip was defective or the result of Zimmer's negligence, is Zimmer's first target.  Zimmer points out that, in her October 2002 deposition, Ms. Bogdan testified that she did not recall if Dr. Moeckel told her why her implant loosened.  See Bogdan Depo. Tr. at 50, 55.  While Ms. Bogdan's now-fortuitous recollection of her conversation with Dr. Moeckel may harm her credibility at

---

[2]Zimmer also argues that the court should strike those portions of the Bogdans' Rule 56 Statement that do not comply with the Local Rules.  Rather than addressing these contentions here, the court will simply evaluate the nonconforming submissions as they arise in connection with its consideration of the Motion for Summary Judgment.

trial, it does directly contradict her deposition testimony.

Next, Zimmer asserts that, in the second sentence of Paragraph Six, Ms. Bogdan claimed that Dr. Moeckel never told her "who the manufacturer of the implant was." In Zimmer's view, this directly contradicts Ms. Bogdan's deposition, where she stated that Dr. Moeckel identified Zimmer in a phone call.  See Bogdan Depo. Tr. at 73. However, these statements obviously deal with different time periods.  The affidavit statement is clearly addressed to Ms. Bogdan's June 1996 conversation with Dr. Moeckel, while the phone call referenced in the deposition is the one in which Dr. Moeckel called Ms. Bogdan in November 2001.  The statements therefore seem entirely consistent, and the court will not strike Paragraph Six of Ms. Bogdan's Affidavit.

The next paragraph that Zimmer challenges in Ms. Bogdan's affidavit is Paragraph Seven, in which Ms. Bogdan claims that she had no reason whatsoever to believe that her hip implant was defective.  Zimmer argues that this contradicts Ms. Bogdan's deposition testimony that the loosening of the prosthetic hip did give her reason to think that the device was at least faulty.  Bogdan Depo. Tr. at 26.  An examination of the context of Ms. Bogdan's deposition testimony belies Zimmer's attempt to impute a contradiction.  The entire text cited by Zimmer is as follows:

> Q: *As you sit here today*, Ms. Bogdan, what is your understanding of – you've used the word faulty with respect to the prosthesis.  Do you have an understanding as to why in your mind you believe it to be faulty?
>
> A (Bodgan): Well, because it was so soon afterwards.
>
> Q: Because it loosened and needed to be replaced so quickly?
>
> A (Bodgan): Yeah.
>
> Q: Anything other than that?

A (Bogdan): No.

Bogdan Depo. Tr. at 26 (emphasis added). The fairest reading of this excerpt is that Ms. Bogdan is testifying to her current understanding of why the hip replacement was defective. Certainly, Ms. Bogdan's knowledge of the Centralign device could be expected to advance once she discovered the pending class action and decided to file suit. Still, Ms. Bogdan's October 2002 understanding of how her implant was defective is a poor predictor of her understanding in 1996. Thus, the court finds that Paragraph Seven of Ms. Bogdan's Affidavit also does not contradict her deposition and should not be stricken.

### C. The Statute of Limitations under the CPLA[3]

The CPLA requires that a plaintiff bring a products liability claim within "three years from the date when the injury . . . is first sustained or discovered or in the exercise of reasonable care should have been discovered." Conn.Gen.Stat. § 52-577a. "Injury" in this context refers to "legal injury" or "actionable harm," which occurs "when the plaintiff discovers, or in the exercise of reasonable care, should have discovered the essential elements of a cause of action." Lagassey v. State, 268 Conn. 723, 748 (2004). In this context, a breach of duty by the defendant and a causal connection between the defendant's breach and the plaintiff's injury constitute the essential

---

[3] Ms. Bogdan's Complaint originally alleged violations under the CPLA, the Connecticut Unfair Trade Practice Act, common law fraud, and a derivative claim for loss of consortium. On March 29, 2005, this court granted the defendant's Motion for Summary Judgment on all counts, ruling that each of her claims was time-barred. Dunn v. Zimmer, Inc., 2005 WL 752214 at *1 (D.Conn. Mar. 29, 2005) (Squatrito, J.). On appeal, the Second Circuit vacated and remanded the portion of the court's decision finding Ms. Bogdan's claim under the CPLA time-barred. Bogdan v. Zimmer, Inc., 165 Fed.Appx. 883, 885-86 (2d Cir. 2006).

elements of a cause of action.  Catz v. Rubenstein, 201 Conn. 39, 44 (1986).  As the Connecticut Supreme Court has held, the harm that ultimately leads to the plaintiff's legal injury "need not have reached its fullest manifestation before the statute begins to run."  Lagassey, 268 Conn. at 741.  However, it appears as though a plaintiff has no duty to investigate a potential claim under the CPLA.  Id. (finding that General Statutes § 52-584 does not impose a duty to investigate potential malpractice claims).

As the Second Circuit has instructed, the relevant inquiry under the CPLA "is not when the injury *could* have been discovered" but "when the injury *should* have been discovered."  Bogdan v. Zimmer, Inc., 165 Fed.Appx. 883, 885 (2d Cir. 2006).  Under this rubric, the Bogdans have put forward enough evidence to create several material issues of fact on their products liability claim.  As discussed below, the court concludes that the Bogdans may be able to prove a set of facts at trial establishing that the first time Ms. Bogdan should have been aware of her legal injury was in November 2001, when Dr. Moeckel alerted her to the pending class action suit dealing with Centralign hip devices.

For one, there is a material issue of fact as to when Ms. Bogdan should have become aware of Zimmer's alleged negligence.  Zimmer claims that Ms. Bogdan "could have" easily discovered Zimmer's identity by either asking Dr. Moeckel about the manufacturer of her hip implant either before or after her revision surgery or looking at the "peel-n-stick" labels attached to her medical records that identified Zimmer as the manufacturer.  Pl. Memo in Support at 22 (Doc. No. 27).  Zimmer's suggestion, however, appears to assume that Ms. Bogdan had a duty to investigate who manufactured her hip replacement.  The court has already discussed the fact that no

such duty seems to exist in Connecticut.  Moreover, the question of whether Ms. Bogdan, exercising reasonable care under the circumstances, should have discovered Zimmer's identity is properly one left to the jury.  The court cannot rule as a matter of law that reasonable care requires patients such as Ms. Bogdan to inquire about the manufacturer of their prior prosthesis after deciding to undergo revision surgery; nor can the court conclusively determine that Ms. Bogdan should have requested her medical records at some point during the period relevant to this action.

Next, the court finds that there is a material issue of fact as to when Ms. Bogdan should have discovered that Zimmer's allegedly defective hip device caused her injury.  According to Zimmer, Ms. Bogdan should have become aware of this causal link shortly after her revision surgery in July 1996.  Zimmer claims that once Ms. Bogdan learned that her hip replacement was loosening prematurely, that this premature loosening was causing her pain, and that her doctor believed revision surgery was necessary, she was "no longer in the dark regarding the fact that she believe[d] something about the implant caused her to be injured."  Pl. Memo. at 15 (citing Gnazzo v. G.D. Searle, 973 F.2d 136 (2d Cir. 1992); Norris v. Baxter Healthcare Corp., 397 F.3d 878 (10th Cir. 2005); and Michaels v. Baxter Healthcare Corp., 289 F.3d 402 (6th Cir. 2002)).

The cases that Zimmer cites, however, do not support granting summary judgment, as they all deal with situations where the plaintiff had actual knowledge that a particular defective device caused her injuries.  See Gnazzo, 973 F.2d at 138 (plaintiff admitted reading about IUD's and figured her IUD implant was causing her problems); Norris, 973 F.2d at 888 (plaintiff admitted that her doctor told her that her breast implants were causing problem and plaintiff requested a different brand); Michaels, 289

9

F.3d at 407 (plaintiff specifically attributed injuries to her breast implants and decided to have them replaced with a different brand).  Ms. Bogdan, by contrast, had no such knowledge.  When she asked Dr. Moeckel about why her hip replacement was loosening, Dr. Moeckel gave her, at best, an uninformative answer.  At that point, a number of reasonable causal inferences were available to a layperson like Ms. Bogdan.  The device could have been installed improperly.  The device could have been the wrong size.  Something about Ms. Bogdan's activities could have caused a random loosening.  The key point is that a juror could permissibly conclude that reasonable care would not have led Ms. Bogdan to become aware of the cause of her injury as a result of her June 1996 conversation with Dr. Moeckel.

As Ms. Bogdan has created a material issue of fact as to whether she should have discovered the essential elements of her products liability claim in November 2001, the court will not grant summary judgment.

## IV.     CONCLUSION

For the foregoing reasons, Zimmer's Motion to Strike Plaintiffs Local Rule 56(a)(2) Statement (Doc. No. 44) is DENIED.  Zimmer's Motion to Strike Plaintiff's Evidence (Doc. No. 42) as to Paragraph Six and Seven of Ms. Bogdan's Affidavit is DENIED.  The remaining portions of the Motion to Strike Plaintiff's Evidence are DENIED as moot since the court did not rely on any of the proffered evidence in this Ruling.  Zimmer's Motion for Summary Judgment (Doc. No. 27) is DENIED.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 13th day of October, 2006.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge